### George H. Carver and Myrvin D. Palmer v. The People.

*Criminal law—Attempt to defraud—Guilty knowledge.*

In a prosecution for uttering and publishing a forged order with intent to defraud, knowing it to be forged, evidence of the scheme and of frauds committed in pursuance of it is admissible to show the *scienter*, under proper instructions against permitting such evidence to prejudice the jury in other respects; it is not excluded by the rule that evidence of other offenses than that for which the accused is tried, cannot be proved.

Under a statute punishing the offense of uttering and publishing forged instruments *knowing* them to be forged, it is error to charge that the accused should be convicted if it was found that he uttered the instrument having *reasonable cause to believe* it was forged.

Guilty knowledge that paper is forged may be found if the jury is satisfied that the accused had reason to believe it was; but the inference is for the jury and does not follow of necessity.

An instruction in a criminal case to act as if the matters involved concerned the jurors themselves or their families, is improper, since it requires the jury to judge the case as if they or their families were either accusers or accused.

Error to Lenawee. Submitted Oct. 31. Decided Nov. 22.

INFORMATION for uttering forged contract.

*Gibson & Clark* for plaintiffs in error.

Attorney General *Otto Kirchner* for the People.

COOLEY, J. The plaintiffs in error were convicted of uttering and publishing as true a false and forged instrument in writing in the words following:

"*White Wire Metallic Clothes Line Company:*

Send me by freight, to Brooklyn Station, two bundles of your seven-strand white wire metallic clothes line, each bundle to contain about one thousand feet, which I will sell in the town of Cambridge, Lenawee county, Mich., only. Reference being had to the following agreement, which I have this day made with your agent, viz.:

I am to give the company above named the retail price for the first order, which I will sell at five cents per foot, in consideration of the exclusive agency to sell said line in said town above named, so long as I sell 3,000 feet a year. It is further agreed by the parties, that all future orders are to be settled for with the company, or their traveling agent, at one-half the retail price within named.

Dated Feb. 15th, 1877.

(Signed)        JOHN MONAGIN,

P. O. Address, Springville.

O. H. Dingman, Agent for the Company."

The information was filed under § 7632 of the Compiled Laws, which provides that every person who shall utter and publish as true any false, forged, altered or counterfeit record or other instrument enumerated, among which is any order, acquittance or discharge for money or other property, knowing the same to be false, altered, forged or counterfeit, with intent to injure or defraud, shall be punished by imprisonment as therein limited.

The theory of the prosecution was that plaintiffs in error and O. H. Dingman named in the order, were engaged in carrying out an extensive scheme of fraud, in furtherance of which Dingman traveled about the country and by various tricks and devices fraudulent in their character, obtained signatures to orders similar to the one set out in the information, while the signers supposed they were subscribing something different, and perhaps in some instances forging the signatures himself; and that plaintiffs followed him with the forged papers, and by threats of legal proceedings succeeded in many cases in obtaining money in settlement.

Evidence tending to show this scheme and frauds committed upon various persons in pursuance of it was allowed to be given, as tending to show the *scienter* in the case under investigation. Errors are assigned on the admission of this evidence, and it is insisted that it comes under the familiar rule which, when an accused person is on trial for one offense, precludes evidence of other offenses being given to prejudice him.

We have not been favored with any brief on behalf of the prosecution in this case, and are therefore without the assistance which a presentation of the views of the prosecution may generally be expected to afford. An examination in detail of the numerous questions raised by the record must always be somewhat unsatisfactory, when they are argued on one side only, and under the circumstances we do not think it advisable to discuss at length the errors assigned.

There was no error in permitting the prosecution to show the general scheme of fraud, to which Carver, Palmer and Dingman were parties, nor the specific acts which were done by them severally in pursuance of their conspiracy. The evidence was a part of the case against these defendants; it tended to show their knowledge that the instrument purporting to be signed by Monagin was forged, and thereby fix upon them the criminal intent. The fact that it also tended to prove them guilty of other offenses was one of the misfortunes of their position; the evidence was not given for that purpose, but as having a direct and necessary bearing upon the particular offense for which they were on trial. The court receiving the evidence was under obligation to protect them by proper instructions to the jury, against being unfairly prejudiced, and no doubt did so in this case.

Many of the exceptions relied upon in this case appear to us frivolous, but two which are taken to the charge are fatal to the conviction. The circuit judge instructed the jury that if they found the accused uttered the instrument having reasonable cause to believe it was forged, they should find them guilty. This was a serious error. The statute punishes those only who utter and publish forged instruments knowing them to be forged, but this instruction required a conviction if the jury believed the accused were merely negligent in uttering an instrument in respect to which the facts should have put them upon their guard.

No doubt if the jury are satisfied the accused had reason to believe the instrument was forged, they might find the guilty knowledge. But knowledge of a thing and reason to believe in its existence are not identical, and the finding of the one is not equivalent to the finding of the other. The one falls short of the other exactly as gross carelessness falls short of criminal intent. It is a state of things from which knowledge might be inferred, and under the circumstances of this case probably ought to have been inferred; but the inference was one the jury might or might not draw, according as they were or were not satisfied of the privity of the accused with the fraudulent practices of Dingman. They were not required to deduce the conclusion if they had reasonable doubts of the guilty knowledge.

We also think the circuit judge was not as careful as he should have been in explaining to the jury what is meant by the reasonable doubt upon which they should refrain from convicting. The following among other things was said to them: "After looking over all this testimony, if these matters were concerning yourselves or your own families, or the members of your families, and you would be willing to act upon it, you should act upon it in this case." These matters could not well concern the jury or their families except either as accusers or accused, and to ask them to judge of them from either standpoint is to put them into a position very unsuitable to a dispassionate consideration of the case. Naturally the jury from this instruction would assume that they might deal with the case as they would be likely to if they or their families had been the victims of the fraud; and the instruction had a tendency to disarm their caution rather than to put them upon their guard against being led astray by a plausible but doubtful case.

The judgment must be reversed, and a new trial ordered.

The other Justices concurred.