# SINCLAIR v. DISTRICT OF COLUMBIA.

SMOKE LAW; EVIDENCE; ADMISSIONS; STATUTORY CONSTRUCTION;
" BUILDING."

1. In a prosecution under the act of Congress of February 2, 1899,
known as the " smoke law " where the defendant, the superin-
tendent of an electric lighting company, is charged with a viola-
tion of the law in his personal capacity as agent and occupant
of certain premises, his admissions to an inspector of the munici-
pality are admissible in evidence to incriminate him personally,
although they might not be admissible against the company of
which he is the agent.

2. In such a prosecution, the refusal of the trial court to permit the
defendant, on cross-examination of the engineer of the company,
to ask the witness how he got his supply of coal for running
the machinery, is not error, although the purpose of the defendant
was to show that he had nothing to do with the purchase and
supply of the coal for consumption in the furnaces; the defendant
as the occupant of the building from the smokestack of which the
prohibited smoke was emitted, although acting as the agent of
another and although the coal may have been purchased or fur-
nished by another, being liable for a violation of the act.

3. It is not error in such a prosecution, for the trial court to exclude
testimony offered by the defendant tending to show that the
smoke emitted could not, under any circumstances, have occa-
sioned material injury, inconvenience, or discomfort to the pub-
lic; *following* Moses v. United States, 16 App. D. C. 441; nor
that the emission of the prohibited smoke could not be prevented
without shutting down the furnaces and ceasing the operation
of the plant; *following* Bradley v. District of Columbia, *ante*,
p. 169.

4. Under the act of Congress of February 2, 1899, known as the
" smoke law ", the word " building " includes all contiguous struct-
ures occupied and used in the prosecution of one general business
use or purpose; and where an information charging a violation of
that act is against the defendant as the occupant of a building
situated at the premises of a certain corporation in a certain
square, and the testimony shows that while the defendant, the
agent of such corporation, personally occupies as an office one

only of several such contiguous buildings, he manages and con-
trols the entire plant, his occupancy will be deemed to extend,
within the meaning of the act, to all of such contiguous buildings;
and he will be liable for an offense committed in any of them.

No. 1219.   Submitted June 4, 1902.   Decided June 23, 1902.

IN ERROR to the police court of the District of Columbia.
*Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. C. C. Cole* and *Mr. J. J. Darlington* for the plaintiff
in error.

*Mr. A. B. Duvall,* Corporation Counsel, and *Mr. E. H.
Thomas,* Assistant, for the defendant in error.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The plaintiff in error has been convicted in the police
court of the District of Columbia under an information
charging him with the violation of the act of Congress of
February 2, 1899, prohibiting the emission of dense or thick
black or gray smoke or cinders from the smokestacks or
chimneys attached to stationary engines, boilers and
furnaces in buildings in the District of Columbia.   The in-
formation contains two counts.   The first charges the de-
fendant, Lindley E. Sinclair, as the " occupant of a certain
building, to wit, the building situated at the premises of the
United States Electric Lighting Company, in square num-
bered two hundred and fifty-nine (259) in the city aforesaid,
in the District aforesaid, to which said building there is
attached a smokestack and chimney used in connection with
a certain stationary engine, steam boiler, and furnace in said
building," etc., etc.

The second count charges the said defendant as " the
agent of a certain building," situated as before described in
count 1.

2. The first assignment of error is on an exception taken to the admission of the evidence of the witness Lynch relating a conversation had with the plaintiff in error.

Lynch is an inspector of the health department, which is charged with the duty of enforcing the law. Having testified to the emission of the prohibited smoke from the smokestack of the power house of the electric lighting company in square No. 259, at several different times on February 25, 1902, he proceeded to state, that about eighteen months before, he had visited the plant with a view to ascertain who had supervision of the same; that he saw the defendant and told him he had been detailed to aid in the enforcement of the " smoke law," and inquired what steps had been taken to abate the smoke nuisance at the various power houses; that defendant said that he was superintendent of, and had supervision over the power houses of the company, including that in square No. 259; that six months later he made another visit and had another conversation with defendant; that defendant then said that they were negotiating for smoke consumers and expected to prevent the emission of the objectionable smoke; that defendant was then informed that something must be done or prosecutions would be instituted. Objection was made by defendant on the grounds, first, that the date was too remote, and, second, that the agency of the defendant for the electric lighting company could not be proved by the admission of the alleged agent.

The objection that the admission of the defendant was made too long before the date of the offense charged, if well taken, was cured by additional testimony tending to show that at, and subsequent to, the date of the offense, the defendant was the general superintendent of the lighting company and as such had his office in a building on said square 259. Part of this testimony consisted of letters written by defendant as general superintendent, to the District Commissioners, relating to water supply, bills, etc., for the plant, output of electricity, etc. The last, dated February 5, 1902, was a report of the quantity of coal consumed

in October, November and December, 1901, and January, 1902. The engineer in charge of the thirteen furnaces also testified that he had been employed by defendant and his pay agreed upon with him; that defendant was general superintendent and his superior officer; and that he made verbal and written reports to him from time to time relating to the operation and repairs of the boilers and engines.

The general secretary of the electric lighting company was called for the defendant, and stated that defendant had been appointed superintendent by oral order of the president of the company, made in the presence of the witness. On cross-examination he stated that defendant had been told " to go down there and look after the operation of the plant." (It would seem from this and other statements that the general office of the company is located elsewhere; but the fact was not undertaken to be proved.)

In the course of the examination also of the engineer in immediate charge of the furnaces and engines, counsel for defendant stated: " There is no question about Mr. Sinclair's general authority to direct about the repairs of the machinery wherever necessary; and the operating of the machinery to a certain extent."

The conversation of Lynch with the defendant, as well as the letters of the latter as general superintendent, were admissible against him. The prosecution was that of defendant as occupant and agent, and not of his principal for his acts as such agent. The admission was offered to incriminate him, and not his principal.

3. There was no error in refusing to permit the defendant, in the cross-examination of the engineer, Bolton, to ask, " how he got his supply of coal for running the machinery?" There is nothing in the record to show the relevancy of the proposed evidence. However, had the purpose been declared to show that the defendant had nothing to do with the purchase and supply of the coal for consumption in the furnaces, the exclusion of the testimony would not be error.

If defendant was the occupant of the building from the smokestack of which the prohibited smoke had been emitted,

acting as the general superintendent and agent of the owner, then he is punishable by the express terms of the act of Congress, no matter by whom the coal may have been purchased or furnished, or actually placed in the furnaces for consumption.

4. There was no error in refusing to permit a witness to testify whether the smoke that was emitted on February 25, 1902, could under any circumstances occasion material injury, inconvenience, or discomfort to the public. *Moses* v. *United States,* 16 App. D. C. 428.

5. The next assignment of error relates to the exclusion of testimony offered to show that the emission of the prohibited smoke could not be prevented without shutting down the furnaces and ceasing the operation of the plant.

Without reciting and analyzing this testimony it is sufficient to say that it is similar in character to that recently considered in the case of *Bradley* v. *District of Columbia, ante,* p. 169, and was rightly excluded for reasons stated at length in the opinion in that case.

6. Errors have been assigned on certain instructions given to the jury, as well as upon others that were prayed by the defendant and refused, to which, respectively, exceptions were regularly reserved.

It is not worth while to consume space by setting out the first and second instructions. Of these, it is sufficient to say that they correctly defined the law, and the duty of the jury in the consideration of evidence of its violation.

The third and fourth instructions read as follows:

" 3. The jury are instructed that if they find from the evidence that the defendant, at the time charged in the information, had control of the premises mentioned therein, and had his office or place of business on said premises, then he was an occupant of said premises within the meaning of the act of Congress under which he is now proceeded against."

" 4. The jury are instructed that if they find from the evidence that the defendant, as superintendent of the United States Electric Lighting Company, had an agency in the con-

trol of the furnaces producing the smoke described in the evidence at the time charged and place mentioned in the information and evidence, or at said time and place had as such agent control of the engineer or other person who operated the same, and that at said time and place dense or thick black or gray smoke emitted or issued from any smoke-stack or chimney of said premises used in connection with any stationary engine, steam boiler or furnace thereon, then they should find the defendant guilty."

Instructions five and six are practically to the same effect as three and four above quoted.

The information, it will be remembered, charged the defendant as the occupant of a building situated at the premises of the United States Electric Lighting Company in square 259.

The testimony to which the foregoing instructions were intended to apply tended to show the following facts relating to the location of the stationary engines, boilers and furnaces owned by the United States Electric Lighting Company, and operated under the general superintendence of the defendant as its agent and the responsible occupant of its building. Square 259, or the part thereof occupied by the lighting company, is bounded by Thirteen-and-a-Half, B and Fourteenth streets, in the city of Washington, N. W. The power house is on the north side of B street between Thirteen-and-a-Half and Fourteenth streets. This power house building is divided into two parts. The southern part contains the dynamos and engines, and the rear part the engines and boilers, which are connected with the smokestack at the Fourteenth street end of the building. A wing connected by doors runs north to the line of the company's property. North of the boiler room is a private alley, called a "blind alley," which opens on Fourteenth street. One side of this alley is bounded by the brick wall of the power house, and the other by the wall of the building fronting Fourteenth street and bearing the number 213 and a sign indicating the office of the company. The alley extends the length of 213 and stops against the

wall of the power house wing aforesaid.  A brick wall projects a short distance from the wall on each side of the mouth of the alley-way, and an iron gate between enables it to be opened and closed at the will of the owner.  A double door opens from this alley into the boiler room, and three doors open from the same into the rear of No. 213, which part is used as a repair shop.  The rear wall of the power house wing, crossing the end of the alley-way, constitutes the rear wall of No. 213 aforesaid.  The building marked No. 213 Fourteenth street contains four other premises, numbers 215, 217, 219 and 221, which are used as store rooms and all of which have connecting doors as well as an interior yard or court with which they connect.  On the northern wall of these premises, which is the wall of No. 221, there is a large painted sign: " The United States Electric Lighting Company: Office, 213 Fourteenth Street, N. W."  A witness for the prosecution said that defendant has his office and desk in No. 213, and that he had seen him in nearly every room of the building.  The general secretary of the company testified as follows: " The defendant has no office in the building where the machinery or boilers or furnaces are.  That the building containing the machinery fronts on B street running from Thirteen-and-a-Half and B streets to Fourteenth and B streets and north about 120 feet.  That is the power house which contains the machinery and boilers.  Then the next is the alley-way about fifteen or twenty feet wide.  On the north side of that alley-way and to the north of the building containing the machinery referred to is the building occupied by Mr. Sinclair, and that there is no office of the company in the building where the machinery is.  That defendant's office is in No. 213.  That the power house and the building No. 213 are not under the same roof, but are separate buildings."

The defendant asked several counter-instructions embodying his view of the effect of this testimony, all of which were refused.  One of these (No. 9) presents the issue directly as follows: " The jury are instructed that if they

find there is no smokestack on building No. 213 Fourteenth street then their verdict should be for the defendant."

We find no error in the action of the trial court.

Building, as used in the act of Congress, comprehends something more than may be known as a single house, or a tenement considered as a part of a building occupied by a distinct tenant.

Looking at the general purpose and scope of the act, it is reasonably clear that the general term, " building," was intended to include all the contiguous structures occupied and used in the prosecution of one general business use or purpose. Unquestionably, too, if a natural person, as owner or lessee, conducted the same business upon the same premises as described in the testimony, he would be liable as owner or occupant whether he had his private business office in a separate house on the premises, or even if he had no such private office at all. And if the same business were carried on by a general representative of a distant owner, such representative would be liable as occupant and agent under the same circumstances.

As the premises and business belonged to a corporation, it could only act in its operation through representatives and agents.

That the defendant was the general managing representative and agent of the corporation in the conduct of the business is put beyond question by the evidence.

He was not limited to the supervision of the office in a particular part of the building, but was in management and control of the operation of the entire plant. That he kept his private office and desk in a particular place removed from the boiler and furnace room is a matter of no importance whatever in determining his liability. As the general representative of the corporation, his occupancy extended to ·every part of the premises used in carrying on the general business, and his agency extended to each and every part of the general building.

The judgment must be affirmed, with costs. It is so ordered.                                  *Affirmed.*