## GILMORE v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. November 23, 1920.)

No. 3550.

1. **Criminal law ⟪⟫1151—Refusal of continuance discretionary.**
   A motion for continuance is addressed to the discretion of the court, and its action in refusing to grant the same will ordinarily not be interfered with.

2. **Criminal law ⟪⟫594 (1)—Refusal of continuance for absent witness discretionary.**
   Refusal of a continuance because of the absence of a witness *held*, on the showing made, within the discretion of the court.

3. **Criminal law ⟪⟫730 (1)—Remarks of counsel not ground for reversal, in view of court's action.**
   Remarks of the district attorney in his argument to the jury *held* not ground for reversal, where, on its attention being called to them, the court ruled that they were improper, and admonished the attorney, and no further action was requested.

4. **Internal revenue ⟪⟫2—Harrison Anti-Narcotic Act constitutional.**
   Harrison Anti-Narcotic Act Dec. 17, 1914, § 1, as amended by Act Feb. 24, 1919, § 1006 (Comp. St. Ann. Supp. 1919, § 6287g), making it unlawful to purchase, sell, or dispense designated drugs, except in or from the original stamped package, *held* constitutional, as within the revenue powers of Congress.

In Error to the District Court of the United States for the Western District of Texas; William R. Smith, Judge.

Criminal prosecution by the United States against John Gilmore. Judgment of conviction, and defendant brings error. Affirmed.

George E. Wallace, A. J. Harper, E. F. Cameron, P. E. Gardner, and M. Scarborough, all of El Paso, Tex., for plaintiff in error.

Edmund B. Elfers, Asst. U. S. Atty., of El Paso, Tex.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. The plaintiff in error, John Gilmore, was indicted jointly, with one Henry Araki, a Japanese, for purchase of 41 ounces of morphine sulphate not in or from the original stamped packages, in violation of the Act of Congress of December 17, 1914, known as the Harrison Anti-Narcotic Act, as amended by Revenue Act 1918, §§ 1006, 1007 (Comp. St. Ann. Supp. 1919, §§ 6287g, 6287l).

This act, as amended, levies a tax of one cent on each ounce or fraction thereof of opium, coca leaves, or any compound, salt, or derivative, or preparation thereof, produced, or imported into the United States, the same to be represented by stamps affixed to the bottle or other container, so as to securely seal the stopper, covering, or wrapper thereof. The Act makes it a criminal offense—

"for any person to purchase, sell, dispense, or distribute any of the aforesaid drugs, except in the original stamped package, or from the original stamped package; and the absence of appropriate tax-paid stamps from any of the aforesaid drugs shall be prima facie evidence of a violation of this section by the person in whose possession the same may be found."

The record shows that the defendants were indicted twice; the first indictment consisting of three counts, and the second indictment of one. The case was finally submitted to the jury on the first count of the first indictment, charging the defendant with illegally purchasing, on or about January 9, 1920, in the county of El Paso, in the Western district of Texas, 41 ounces of morphine sulphate not in or from the original stamped packages. The defendants were found guilty (Araki pleading guilty) as charged in said first count.

The evidence offered by the prosecution tended to show that Gilmore purchased this morphine through his codefendant Araki; that he gave Araki $2,000 in money, told him to use his automobile, and that he would find a Mexican on Stanton street, near Fourth, to whom he should give the money and receive a grip or suit case with this morphine; that this conversation took place inside of the Capes Building and not on the street. Araki did get the automobile in front of the building. The evidence of Gilmore showed that he and Araki had had previous dealings concerning other matters and were well acquainted. Araki testified that Gilmore had prior to this time urged him to engage in illicit dealing in morphine. Gilmore denied this. The proof showed without contradiction that Araki took Gilmore's automobile from the Capes Building with his knowledge and brought back this suit case in said automobile to the Capes Building; that Gilmore got into the automobile and rode to the Lockie Hotel, took out the suit case, and carried it to room 31 of the Lockie Hotel.

Gilmore in his evidence admitted this, but denied he had given Araki any sum of money, and offered as an explanation of his carrying this suit case up to said room 31 that Araki had asked him to take the suit case to this room because he (Araki) had on dirty clothes, and did not care to go into a nice hotel. Gilmore denied knowing what were the contents of the suit case. In room 31 was a man named Rebentish, a Secret Service agent. He testified to having had quite a considerable preliminary conversation with Gilmore about the purchase of this morphine, and that they had arranged to meet at the Lockie Hotel, for the purpose of a delivery of the morphine being made to him by Gilmore; that Gilmore met him in room 31 with the suit case containing a number of bottles of morphine, which was opened, and he and Gilmore were counting the number of bottles when the officers arrested Gilmore. The arresting officers, who were in a closet, overheard the conversation and fully corroborated Rebentish's statements. Gilmore ad-

mitted having drawn $2,000 from the bank that day, but denied having let Araki have any part of it.

The plaintiff in error assigns as error that the court erred in overruling a motion to continue said case, or postpone its consideration to a later day in the term, because of the absence of Alvin Hessen, a witness, who was stated to reside in Eastland county, Tex. The showing as to the evidence of Hessen was that defendant was talking to Hessen on the streets of El Paso, in front of the Capes Building, on January 9, 1920, when the defendant Araki came up, and in the presence and hearing of Hessen requested a loan of defendant's automobile to go to a place on South Stanton street, in El Paso, that defendant did lend his automobile to said Araki, and that Hessen was present when Araki returned with said automobile; that on January 9, 1920, said Hessen told defendant he was going to Ranger, in Eastland county, Tex., to work on the pipe lines there. Defendant believes said Hessen is in Eastland county. The indictment was found on January 23d. Defendant got a copy of it on January 24th. On January 26th he applied for a subpoena, returnable instanter. No further showing was made as to the whereabouts of Hessen, or as to his testimony. The court overruled the motion.

[1] A motion for a continuance is addressed to the discretion of the court, and the action of the court in refusing to grant the same will not be ordinarily interfered with. Franklin v. South Carolina, 218 U. S. 161, 30 Sup. Ct. 640, 54 L. Ed. 980; Goldsby v. United States, 160 U. S. 70, 16 Sup. Ct. 216, 40 L. Ed. 343.

[2] In view of the fact that the testimony of Hessen, if procured, would not have contradicted the testimony of Araki, as to his receiving this money and the directions of Gilmore inside of the Capes Building, and was consistent with the fact that a conversation, as claimed, could have occurred on the outside thereof; in view of the further fact that no effort seems to have been made to ascertain whether Hessen was in Eastland county, nor does it appear that a subpoena sent to such county would have produced the witness; and taking into consideration the admitted connection of Gilmore with the handling of the suit case containing the morphine—this court cannot say that the District Judge abused his discretion in overruling the motion for continuance or postponement.

[3] The next error insisted upon is that certain remarks were made by the district attorney in his concluding argument to the jury. The attention of the court was called by counsel for the defendant to this language of the district attorney, and the judge held that said remarks were improper and admonished the district attorney. No request for any further action on the part of the court seems to have been made. This is a sufficient reply to this assignment of error. Chadwick v. United States, 141 Fed. 225, 72 C. C. A. 343. In view of the testimony in the record, which fully sustains the verdict, it cannot be said that the defendant was prejudiced by the failure of the court to take any further action in regard to said remarks.

Error is also assigned that the court erred in failing to instruct the jury, as requested by defendant in writing, that if the morphine sul-

268 F.—46

phate was purchased by the defendant in the republic of Mexico, or otherwise than in the state of Texas, the jury should return a verdict of not guilty. The only testimony in this case as to the place of purchase was the testimony of Araki, who testified that he received a suit case containing the morphine from a Mexican in the city of El Paso, Tex., and there paid him the $2,000; that he did not go to Juarez that day. There was no evidence whatever on which to base such charge. The court in his charge plainly stated to the jury that to find the defendant guilty they would have to find, among other things, that the morphine in question was purchased by the defendant on or about January 9, 1920, in El Paso, Tex.

[4] The last assignment of error complained that the court should have sustained the motion of the defendant to withdraw the case from the jury, or instruct the jury to return a verdict of not guilty, because that, even if the defendant purchased the morphine sulphate after it was smuggled into the United States, and into Texas, he would be guilty of no offense, as said act of Congress, attempting to make the purchase of the morphine sulphate within a state an offense against the United States, would be unconstitutional and void.

The act in question provides for the levy of an internal revenue tax upon each ounce, or fraction of an ounce, to be paid by the importer, manufacturer, producer, or compounder of the opium, coca leaves, compound, salt, derivative, or preparation thereof, produced in or imported into the United States and sold, or removed for consumption or sale, such tax to be represented by appropriate stamps to be so affixed to the bottle or container as to securely seal the stopper, covering, or wrapper thereof. It is made unlawful for any person to purchase, sell, dispense, or distribute any of the aforesaid drugs, except in the original stamped package, or from the original stamped package. Under the decision in the case of United States v. Doremus, 249 U. S. 86, 94, 39 Sup. Ct. 214, 63 L. Ed. 493, we think that this act is constitutional. This provision, by confining purchases to the drugs in the packages, or from the packages stamped, clearly tends to confine the purchases and dealings in such drugs to those which have paid the internal revenue tax levied. A compliance with this law by all purchasers would extend all transactions to such drugs as had paid the internal revenue tax. As stated in the case last cited:

"Considering the full power of Congress over excise taxation, the decisive question here is: Have the provisions in question any relation to the raising of revenue?"

We think that they have quite as effective a relation to the raising of revenue as the prohibition in section 2 of said Anti-Narcotic Drug Act (Comp. St. § 6287h) prohibiting the making of sales, etc., except to persons who give orders on the forms issued by the Commissioner of Internal Revenue, and forbidding any person to obtain the drugs by means of such order forms for any purpose other than the use, sale, or distribution thereof by him in the conduct of a lawful business therein, or in the legitimate practice of his profession, with the exceptions in favor of prescriptions by physicians or sales upon prescriptions.

No other assignment of error in the record has been presented in the brief for plaintiff of error found in this case, and the foregoing covers all material questions in the case.

For the reasons above given, the judgment of the District Court is affirmed.