### EASTERDAY v. UNITED STATES (three cases).

(Court of Appeals of District of Columbia. Submitted April 30, 1923. Decided June 4, 1923. Rehearing Denied October 6, 1923.)

Nos. 3932-3934.

I. Criminal law ⬤═◌491(I)—Other checks bearing same names admissible for comparison of handwriting.

　　Where there was ample testimony that defendant had forged one check, it is proper, under U. S. Comp. St. § 1471, to admit in evidence other checks bearing the same names, for the purpose of comparing the handwriting.

2. Forgery ⬤═◌43—Questioning witness whether alleged forged check had been paid held improper.

　　An objection to questioning witness whether an alleged forged check had been paid, without inquiring by whom, *held* properly sustained.

3. Forgery ⬤═◌14—Injury unnecessary where intent to defraud exists.

　　It was proper for the court to stop defendant's counsel from arguing to the jury that certain checks were not forged with intent to defraud, because the persons to whom they were delivered had already parted with their property, as the fact that the parties whose names were on the checks lost nothing was immaterial, if there was intent to defraud.

⬤═◌For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Forgery ⊜⟳44(1)—Testimony of forgery, indorsement, and delivery warrants finding of intent to defraud.**

Testimony that defendant forged, indorsed, and delivered checks *held* to warrant a finding of intent to defraud.

**5. Criminal law ⊜⟳312—That one intends natural consequences of his act presumed.**

Every sane man is presumed to intend the natural consequences of his act.

**6. Criminal law ⊜⟳315—Continued existence of corporation presumed.**

Where there was evidence that a corporation existed at a time not very remote from the dates in question, the law presumes it was in existence on those dates; there being no proof to the contrary.

**7. Forgery ⊜⟳44(2)—Testimony held to show that defendant was not authorized to sign checks of company.**

Defendant's testimony that he had no connection with a named company *held* sufficient proof that he was not authorized to sign checks of that company.

Appeal from the Supreme Court of the District of Columbia.

Wilen W. Easterday, otherwise known as W. Wilen Easterday, was convicted and sentenced on four counts of three indictments, consolidated, each charging the forging and uttering of checks, and he appeals. Affirmed.

Foster Wood, of Washington, D. C., for appellant.

Peyton Gordon and J. H. Bilbrey, both of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

SMYTH, Chief Justice. Appellant was convicted and sentenced on four counts of three indictments, consolidated, each of which charged the forging and uttering of certain checks.

At the time the checks were uttered he was treasurer of the Abe Lincoln Candy Company, of Washington, which then did business with George P. Killian & Co. and C. D. Kenny Company, also of Washington, and was indebted to both for goods supplied to it. The checks were delivered to the companies by the defendant to apply on the indebtedness. No goods were obtained upon the strength of the checks.

The checks purported to be drawn by Old Colonial Chocolate Co., Inc., of New Jersey, in favor of the Lincoln Company, on the National Newark Banking Company, of Newark, N. J., and to be signed by C. H. Bready, president, and J. F. Jack, treasurer, of the first-named company. The testimony tended to show that Jack was at one time treasurer of the Chocolate Company, but did not hold that position when the checks were drawn, and that his name was forged to them. Afterwards the checks, marked in the record for the purpose of identification, "A," "B," and "C," were indorsed by the defendant as treasurer of the Lincoln Company, and two were delivered by him to the Killian Company and one to the Kenny Company for the purpose just stated. At the close of the government's testimony, the defendant moved for a directed verdict. His motion was overruled, and he excepted. He then proceeded with his testimony, and, when

⊜⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

both sides had rested, renewed his motion for a peremptory instruction. It was sustained as to certain of the counts, and overruled as to others. In so far as it was overruled, he says there was error.

Three errors are assigned. The first relates to the admission and exclusion of evidence; the second, to the failure of the court to sustain the motion for a directed verdict; and the third, to the alleged refusal of the court to permit the defendant to argue to the jury that the checks were not delivered with intent to defraud anybody.

[1] There being ample testimony tending to show that Jack's name on check B was forged by the defendant, checks A and C were then received in evidence, so that the jury might compare the handwriting in which his name appeared on them with that in which it appeared on check B, for the purpose of determining whether or not it was the work of the same person. In this there was no error. Section 1471, U. S. Comp. Stat., says:

"In any proceeding before a court or judicial officer of the United States where the genuineness of the handwriting of any person may be involved, any admitted or proved handwriting of such person shall be competent evidence as a basis for comparison by witnesses, or by the jury, court, or officer conducting such proceeding, to prove or disprove such genuineness." Id. 37 Stat. 683.

[2] An employé of the Killian Company, to whom check B had been delivered, was asked by the defendant if the check had been paid, without inquiring by whom. An objection to the question was sustained. Later the same question was asked, and she was permitted to answer, without objection, that she could not tell, but that her books would show. Subsequently it appeared by the testimony of another witness that the check was not paid. We think the objection was properly sustained, for if, under any circumstances, payment would be material, it could not be unless made by the defendant, and the question did not call for information on that point.

[3] In his argument to the jury counsel for defendant contended that the checks were not forged and uttered with the intent to defraud, because the persons to whom they were delivered "had already parted with their property, and all they had was a civil right of action." The court stopped him, saying he was not stating the law correctly, and admonished him not to follow that line of argument any further. He now says that he was thereby prohibited from arguing to the jury that the checks were not delivered with the intent to defraud or prejudice anybody. With this view we cannot agree. Our Code (section 843) prescribes:

"Whoever, with intent to defraud or injure another, falsely makes or alters any writing of a public or private nature. which might operate to the prejudice of another, * * * shall be imprisoned," etc.

Bishop, in his work on Criminal Law (2d Ed.) § 523, says:

"Forgery, at the common law, is the false making or materially altering, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability."

And Clark declares:

"The instrument must be apparently capable of effecting a fraud." Clark, Criminal Law, § 118.

The definition given by these authors has been approved by us in Frisby v. United States, 38 App. D. C. 22, 26, 37 L. R. A. (N. S.) 96, and Dowling v. United States, 41 App. D. C. 11, 16. It will be observed that neither the Code, Bishop, nor Clark requires that any one shall be actually defrauded, or that the accused shall have the intent to defraud any particular person. All that is required in that respect is that there be an intent to defraud some one. This is inferentially admitted by counsel for the appellant in his supplemental brief, wherein he says:

"It is incumbent upon the government to prove that appellant had a criminal intent—that is, an intent to defraud some one—when the checks were written or uttered."

Of course, it is clear that the intent to defraud could exist without any actual fraud resulting. The fact, then, that the indorsees suffered nothing by reason of the forged checks was immaterial, and there was no error in forbidding counsel to contend for the contrary before the jury.

Nor did the ruling of the court prevent him from arguing that there was no intent to defraud. It left that question untouched. All he was prohibited from doing was to contend that failure to prove actual fraud—loss by the indorsees of the checks—entitled his client to a verdict of not guilty.

[4] We next come to consider whether there was any proof of an intent to defraud, for, if there was, then the motion for a peremptory instruction was properly overruled. It will be remembered that the checks purported to be drawn by the officers of the Chocolate Company on the National Newark Banking Company, and were payable to the Abe Lincoln Company. There was testimony tending to show that the defendant forged the checks and then indorsed and delivered two to the Killian Company and one to the Kenny Company.

[5] Every sane man is presumed to intend the natural consequences of his act. Reynolds v. United States, 98 U. S. 145, 167, 25 L. Ed. 244; United States v. Breese et al. (C. C.) 173 Fed. 402. In the ordinary course of affairs the checks would be presented to the bank for payment, and, if paid, either the bank or the Chocolate Company would suffer in the event the proceeds could not be recovered from the payees. All of these things might happen as the natural outcome of defendant's acts, and since he intended such an outcome he intended to defraud within the meaning of the law. At least the jury was warranted in drawing that conclusion from the testimony before it.

[6] It is urged that there was no proof of the existence of the Chocolate Company at the time the checks were uttered, and that, if it did not exist, defendant could not have had an intent to defraud it—a nonentity. There was evidence that it existed at one time not very remote from the dates of the forgeries, and, this being so, the law presumes it continued to exist, there being no proof to the contrary. 22 C. J. 86, § 28; Patapsco Insurance Co. v. Southgate, 5 Pet. 602, 8 L. Ed. 243; Texas & P. Ry. Co. v. Reagan, 118 Fed. 815, 55 C. C. A. 427; Whitford v. Clark County, 119 U. S. 522, 7 Sup. Ct. 306, 30 L. Ed. 500; Campbell v. Willis, —— App. D. C. ——, 290 Fed. 271.

[7] Nor is there any merit in the contention that the government failed to prove the checks were not signed and uttered by the defendant under the authority of the Chocolate Company. He testified that he had no connection whatever with that company. If he had no connection with the company, then it cannot be said that he was authorized by it to sign the checks.

From this survey we are convinced that there was enough evidence, if believed by the jury, to support a verdict that the defendant forged and uttered the checks with the intent to defraud, and that the court did not err in overruling the motion for an instruction directing a verdict of acquittal. This disposes of all the points raised.

Finding no error in the record, we affirm the judgment.

Affirmed.

Petition for writ of error to remove causes to the Supreme Court of the United States denied December 8, 1923.