## MILTON et al. v. UNITED STATES.
### No. 7423.

United States Court of Appeals for the District of Columbia.
Feb. 26, 1940.

---

Martin S. Vilas, Norman S. Bowles, Jr., and John Mitton, all of Washington, D.C., for appellants.

David A. Pine, U. S.. Atty., and John W. Jackson, Asst. U. S. Atty:, both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

MILLER, Associate Justice.

Appellants were convicted in the court below of uttering a check, having thereon the false and forged endorsement of James Conroy, knowing it to be forged. The endorsement was written by appellant Quantrille and the check was uttered by his friend and roommate appellant Milton.

Several points were urged for our consideration upon this appeal; one of which was the alleged misconduct of the prosecuting attorney which, it is claimed, occurred—by way of interruption—during appellants' argument to the jury. At that time the following colloquy took place between the respective counsel:

"Mr. Vilas. * * * And he [a witness for the prosecution] comes in here and he says that Milton told him to wipe off the fingerprints from the check. Do you believe that? What would he want to wipe it off for? A Government check. If it had been a forged check, if anybody had been cheated by it, that is another thing. Wipe it off. A man who would say that is not to be believed for anything. Look at Henry Milton over here and see if you think he looks like the kind of a man who would say that kind of a thing. They haven't got anything on him except they kept him in jail for several months.

"Mr. Jackson. Do you want to go into what we have got on him, Mr. Vilas?

"Mr. Vilas. I say, you haven't got anything on him, and I repeat that right now.

"Mr. Jackson. Do you want us to go into that?

"Mr. Vilas. I say, you didn't produce a thing and you haven't got a thing on him. That stands right there.

"Mr. Jackson. *Do you want him to take the stand now?*

"Mr. Vilas. I say we try our own case in our own way.

"The Court. We don't know what the evidence was.

"Mr. Vilas. If you have got anything on him, it is about time to produce it. You have produced about everything you have got.

"The Court. Proceed with your argument." (Italics supplied)

It is the italicized sentence which is challenged.

In the trial of an accused person he may, at his own request, and not otherwise, be a competent witness.[1] The statute which grants this privilege also provides that "his failure to make such request shall not create any presumption against him." As early as 1893,[2] the Supreme Court interpreted this language as follows: "To prevent such presumption being created, comment, especially hostile comment, upon such failure must necessarily be excluded from the jury. The minds of the jurors can only remain unaffected from this circumstance by excluding all reference to it." This principle has been applied in a number of later cases,[3] and its strict observance has been many times commended to prosecuting attorneys.

However, even under the law as it existed at the time of the decision in the Wilson case, such conduct did not necessarily require that the verdict be set aside or a mistrial declared. This is evidenced by the further language of the Court, in that case, when it said:[4]

"And when counsel for defendant called the attention of the court to this language of the District Attorney it was not met by any direct prohibition or emphatic condemnation of the court, which only said: 'I suppose the counsel should not comment upon the defendant not taking the stand.' It should have said that the counsel is forbidden by the statute to make any comment which would create or tend to create a presumption against the defendant from his failure to testify.

"Instead of stating, after mentioning that the United States court is not governed by the state's statutes, 'I do not know that it ought to be the subject of comment by counsel,' the court should have said that any such comment would tend necessarily to defeat the very prohibition of the statute * * *. By this action of the court in refusing to condemn the language of the District Attorney, and to express to the jury in emphatic terms that they should not attach to the failure any importance whatever as a presumption against the defendant, the impression was left on the minds of the jury that if he were an innocent man he would have gone on the stand as the District Attorney stated he himself would have done.

* * * * *

"The refusal of the court to condemn the reference of the District Attorney and to prohibit any subsequent reference to the failure of the defendant to appear as a witness tended to his prejudice before the jury, and this effect should be corrected by setting the verdict aside and awarding a new trial."

It was the duty of counsel for the accused, at once, to call any objectionable remarks to the court's attention; to request its intervention; and in event of the court's failure to do so, then to note an exception.[5] This they did not do. In fact, there is nothing in the record to indicate that, at the time of the colloquy, either counsel or court regarded the challenged statement as objectionable. Only by the broadest application of the principle declared in the Wilson case can it be said that the comment would have had any tendency to create in the minds of the jury a presumption against the accused from his failure to tes-

---

[1] Act of March 16, 1878, 20 Stat. 30, 28 U.S.C.A. § 632: "In the trial of all indictments, informations, complaints, and other proceedings against persons charged with the commission of crimes, offenses, and misdemeanors, in the United States courts, Territorial courts, and courts-martial, and courts of inquiry, in any State or Territory, including the District of Columbia, the person so charged shall, at his own request but not otherwise be a competent witness. And his failure to make such request shall not create any presumption against him."

[2] Wilson v. United States, 149 U.S. 60, 65, 13 S.Ct. 765, 766, 37 L.Ed. 650.

[3] See Note, 84 A.L.R. 784, and cases there cited.

[4] Wilson v. United States, 149 U.S. 60, 67, 68, 13 S.Ct. 765, 767, 37 L.Ed. 650. And see Gilmore v. United States, 5 Cir., 268 F. 719, certiorari denied, 255 U.S. 576, 41 S.Ct. 448, 65 L.Ed. 794; Cross v. United States, 5 Cir., 68 F.2d 366; Lanier v. United States, 5 Cir., 276 F. 699.

[5] Crumpton v. United States, 138 U.S. 361, 364, 11 S.Ct. 355, 34 L.Ed. 958.

tify. The failure of counsel to call it to the court's attention shows that the assignment of error upon this point was an afterthought. Under the circumstances the objection came too late;[6] especially as the court, in its charge to the jury, on its own motion instructed that: "The defendants did not testify in this case. Now, under the Constitution, that is their right and you should not infer anything against them because of the fact that they did not testify."[7] Moreover, even if the question were a doubtful one—under the law as it existed prior to 1919—it is clearly apparent, we think, in view of the provisions of the Act of February 26, 1919,[8] that under the circumstances of the present case no prejudice resulted to the accused from the remark made by the prosecuting attorney.

■ Appellants present, also, for our consideration a closely related question, i. e., whether it was prejudicial misconduct for the prosecuting attorney to comment on the failure of appellants to produce as a witness a woman who was referred to in the testimony as Mrs. Saunders and as Mrs. Skinner. The Supreme Court has stated the applicable rule to be that "if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable."[9] Hence, while it is true that if a witness is equally available to the Government and is in a legal sense a stranger to the accused, no presumption arises against him from his failure to call such a witness;[10] conversely, if the witness is available to the accused and not to the Government and is informed concerning facts material to the case, the presumption arises from his unexplained absence that the accused had good reason

for not calling him; and this may properly be argued against him.[11]

In the present case, the woman in question was identified by one of appellants' witnesses, and also by appellant Quantrille, as the employer of the latter at the inn where Quantrille said he cashed the check. According to the testimony, she was present at that time and "told Quantrille that she did a cash business and she could not take a check, and that Mr. Quantrille would have to cash it himself." This evidence was vital to appellants' defense; the woman stood in close relation to appellant Quantrille, within the meaning of our decision in the Egan case; she was presumably known and available to appellants; her unexplained absence suggests that appellants had good reason for not calling her; and this was properly argued against them.

■ During the course of the trial, there were read into evidence certain portions of the reporters' transcripts of testimony given by Quantrille and Milton, at a former trial and at a former hearing. Objection was made to their admission "on the ground that they were immaterial, irrelevant and incompetent and, further, that said records were secondary evidence and were of testimony taken in a case and hearing where the issues were not similar to the issues involved and portions thereof were taken in a hearing by the Court and where no jury was present." The Government concedes that the testimony was given at a trial for housebreaking and larceny, and at a hearing on a motion for new trial in that case; and that on both occasions the issues were substantially different from those involved in the present case. However, it contends that the evidence was properly received, nevertheless, to prove admissions voluntarily made by appellants.

[6] Diggs v. United States, 9 Cir., 220 F. 545, 556, affirmed, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas.1917B, 1168.

[7] See United States v. Di Carlo, 2 Cir., 64 F.2d 15, 17, 18; Rice v. United States, 2 Cir., 35 F.2d 689, 695, certiorari denied, 281 U.S. 730, 50 S.Ct. 246, 74 L.Ed. 1146.

[8] Jud.Code, § 269, 28 U.S.C.A. § 391: " * * * On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do

not affect the substantial rights of the parties." And see Nash v. United States, 2 Cir., 54 F.2d 1006, certiorari denied, 285 U.S. 556, 52 S.Ct. 457, 76 L.Ed. 945; Shuman v. United States, 5 Cir., 16 F.2d 457; Rice v. United States, 2 Cir., 35 F.2d 689, 695, certiorari denied, 281 U.S. 730, 50 S.Ct. 246, 74 L.Ed. 1146.

[9] Graves v. United States, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021.

[10] Egan v. United States, 52 App.D.C. 384, 395, 396, 287 F. 958, 969, 970; Moyer v. United States, 9 Cir., 78 F.2d 624, 630.

[11] See United States v. Cotter, 2 Cir., 60 F.2d 689, 692, certiorari denied, 287 U.S. 666, 53 S.Ct. 291, 77 L.Ed. 575.

This contention is correct and appellants' assignment of error on this point is without merit.

 When evidence is offered to prove an admission—unlike the situation when it is offered as secondary evidence to prove statements of dead or absent witnesses[12]—there is no requirement that opportunity should have been given for cross-examination [13] and, consequently, no requirement of identity of issues.[14] Admissions have probative value not because they have been subjected to cross-examination and therefore satisfy the hearsay rule, but because they are statements by a party opponent, inconsistent with his present position as expressed in his pleadings and testimony.[15] It is not even necessary that such evidence should have been given in a courtroom or under oath.[16] The fact, that it was so given in the present case, however, does not detract from its admissibility.[17] The applicable rule is well stated in Rafferty v. State,[18] as follows: "It is true that there was no power to compel the defendant to testify against herself; but, having voluntarily gone on the witness stand in her own behalf on the former trial, and there made statements against her interest, it was entirely competent for the State, on the second trial, to prove those statements as admissions voluntarily made. Admissions made under such circumstances may be proven in the same manner and for the same reasons that admissions made out of court may be proven."

Appellants contend, also, that there was no forgery in this case; hence, that it is impossible, within the meaning of the law, for them to be guilty of uttering. The theory of this contention is that the endorsement by one person of the name of another, upon a check which is negotiable by delivery, does not constitute forgery, even though it is done without the knowledge or consent of the latter; and that this is even more true if (1) the endorsement is of a fictitious name, and (2) no one is shown to have suffered loss as a result of such endorsement. But the premise of the contention is incorrect and the conclusion does not follow.

 "Forgery, at the common law, is the false making or materially altering, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability."[19] It is defined by the District of Columbia Code as the false making or altering of "any writing of a public or private nature, which might operate to the prejudice of another, * * * with the intent to defraud or prejudice the right of another * * *."[20] It is enough if the forged instrument be apparently sufficient to support a legal claim and thus to effect a fraud.[21] It is well settled that the sign-

---

[12] See 3 Wigmore, Evidence (2d Ed. 1923) §§ 1386, 1387.

[13] 2 Wigmore, Evidence (2d Ed. 1923) § 1048. See General Finance, Inc. v. Stratford, (No. 7346, decided January 29, 1940) — App.D.C. —, 109 F.2d 843.

[14] 3 Wigmore, Evidence (2d Ed. 1923) § 1387(3); State v. Longstreth, 19 N.D. 268, 276, 121 N.W. 1114, 1117, Ann.Cas. 1912D, 1317; People v. Butler, 111 Mich. 483, 69 N.W. 734; State v. Willis, 71 Conn. 293, 41 A. 820; 2 Bishop's New Criminal Procedure (2d Ed. 1913) § 1255.

[15] 2 Wigmore, Evidence (2d Ed. 1923) §§ 1048(3), 1049, 1050.

[16] See Miles v. United States, 103 U.S. 304, 308, 311, 26 L.Ed. 481; Sinclair v. District of Columbia, 20 App.D.C. 336, 338, 339, appeal dismissed, 192 U.S. 16, 24 S.Ct. 212, 48 L.Ed. 322; O'Neill v. United States, 8 Cir., 19 F.2d 322, 325; Miller v. United States, 7 Cir., 53 F.2d 316. See, also, Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090.

[17] Henderson v. State, 95 Ga. 326, 329, 22 S.E. 537, 538; Macomber v. Bigelow,

126 Cal. 9, 16, 58 P. 312, 315; State v. Hopkins, 13 Wash. 5, 42 P. 627; Rafferty v. State, 91 Tenn. 655, 665, 666, 16 S.W. 728, 730.

[18] 91 Tenn. 655, 665, 666, 16 S.W. 728, 730.

[19] Frisby v. United States, 38 App.D.C. 22, 26, 37 L.R.A.,N.S., 96, quoting 2 Bishop, Criminal Law, § 523; Easterday v. United States, 53 App.D.C. 387, 292 F. 664, certiorari denied, 263 U.S. 719, 44 S.Ct. 181, 68 L.Ed. 523; 2 Wharton, Criminal Law (12th Ed. 1932) §§ 859, 860.

[20] D.C.Code (1929) tit. 6, § 86.

[21] See Read v. United States, 55 App. D.C. 43, 44, 299 F. 918, 921, certiorari denied, 267 U.S. 596, 45 S.Ct. 352, 69 L.Ed. 805: "In State v. Johnson and Johnson, 26 Iowa, 407, 417 (96 Am.Dec. 158), the court said: 'It must be borne in mind that it is not necessary that the instrument shall have actual legal efficacy, but it is sufficient that, if genuine, it might apparently have such efficacy, or serve as the foundation of a legal liability, and, if it might be taken as legal

ing of a fictitious name, with fraudulent intent, is as much a forgery as if the name used was that of an existing person.[22] The public mischief, i. e., the legal tendency to defraud, is equally great in either event.[23]

Neither is it material that no person suffered loss by reason of appellants' act. In Easterday v. United States,[24] this court held that it was not necessary, either at common law or under the statute, that "any one shall be actually defrauded, or that the accused shall have the intent to defraud any particular person." It is sufficient if there is an intent to defraud someone by making or altering a writing, which act *might* prejudice another. It is true that the check, in this case, having been endorsed in blank prior to the time appellant Quantrille received it, might have been negotiated by him without any further endorsement.[25] But it does not follow that the writing of the name James Conroy thereon could not have operated to the prejudice of another. On the contrary, such a result might have been a natural and probable consequence. Not only might such an act have greatly hindered and delayed the person from whom the check was stolen in tracing and recovering it, but subsequent holders, treating the endorsement as genuine and valid, as they were entitled to do, had the right to rely upon the apparent liability of an additional endorser.[26]

It is contended further that there was no evidence that the check was endorsed with intent to defraud or that it was uttered with knowledge of its forged character; and, therefore, that a verdict should have been directed in appellants' favor. However, there was such evidence; the trial judge instructed fully and fairly upon this point; and the jury was warranted in finding, from all the evidence, not only that the endorsement was forged with intent to defraud,[27] but that it was uttered with knowledge of its forged character.[28]

We have carefully considered appellants' other assignments and contentions and find them to be without merit.

Affirmed.

---

proof, it would have such apparent efficacy. True it is, there can be no forgery if the paper is invalid on its face, for it can then have no legal tendency to effect a fraud. If its invalidity, however, is to be made out by extrinsic facts, it may be legally capable of effecting a fraud * * *.' "

[22] See Lyman v. State, 136 Md. 40, 109 A. 548, 9 A.L.R. 401; State v. Wheeler, 20 Or. 192, 25 P. 394, 10 L.R.A. 779, 23 Am.St.Rep. 119; People v. Warner, 104 Mich. 337, 62 N.W. 405; Harris v. State, 19 Ala.App. 484, 98 So. 316; McCornack v. Central State Bank, 203 Iowa 833, 837, 211 N.W. 542, 545, 52 A.L.R. 1297; Walker v. State, 171 Ark. 375, 376, 284 S.W. 36, 37; 2 Wharton, Criminal Law (12th Ed. 1932) § 866; Notes, 9 A.L.R. 407, 24 L.R.A. 45.

[23] United States v. Turner, 7 Pet. [U. S.] 132, 8 L.Ed. 633.

[24] 53 App.D.C. 387, 390, 292 F. 664, 667, certiorari denied, 263 U.S. 719, 44 S. Ct. 181, 68 L.Ed. 523.

[25] D.C.Code (1929) tit. 22, § 45: "An indorsement in blank specifies no indorsee, and an instrument so indorsed is payable to bearer and may be negotiated by delivery."

[26] D.C.Code (1929) tit. 22, § 97: "Where a person places his indorsement on an instrument negotiable by delivery he incurs all the liabilities of an indorser." See id. §§ 94–96. See also, State of Iowa v. Pierce, 8 Iowa 231, 235, 236; King v. Tuft, 1 Leach's C.C. (Eng.) 206; King v. Taylor, 1 Leach's C.C. (Eng.) 255.

[27] Easterday v. United States, 53 App. D.C. 387, 390, 292 F. 664, 667, certiorari denied, 263 U.S. 719, 44 S.Ct. 181, 68 L.Ed. 523.

[28] See Taylor v. State, Okl.Cr.App., 88 P.2d 665, 668, 669; Carver v. People, 39 Mich. 786; Wells v. Territory, 1 Okl. Cr. 469, 98 P. 483, 487.