**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William Darryl BLAKEMORE,
Defendant-Appellant.**

No. 73-1288.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 3, 1973.

Decided Dec. 13, 1973.

Wm. H. Allison, Jr. (Court Appointed), Louisville, Ky., on brief for defendant-appellant.

James H. Barr, Asst. U. S. Atty., for plaintiff-appellee; George J. Long, U. S. Atty., on brief.

Before PHILLIPS, Chief Judge, McCREE and MILLER, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

This is an appeal from a criminal conviction in the district court. The defendant-appellant, William Darryl Blakemore, was convicted in the court below on a charge of possessing a sawed-off

.12 gauge shotgun in violation of 26 U. S.C. § 5861(d). He was given a five year sentence to run concurrently with a ten year sentence he had received in state court for armed robbery.

■ The appellant makes a number of contentions on appeal, one of which is that the trial judge erred in allowing the prosecutor to comment in his argument to the jury that the defendant's failure to call four prospective witnesses would give rise to an inference that their testimony would be unfavorable to the defendant. We deem it unnecessary to discuss the other assigned grounds for reversal since in our view this issue is critical.

The appellant and the prosecutor each presented a list of prospective witnesses to the trial judge for his use in conducting the voir dire. The appellant's list contained six names.[1] During the course of the trial, the appellant called one witness from his list to testify. The prosecutor stipulated to the testimony of another defense witness on the list. At the close of the appellant's case, the prosecutor, out of the presence of the jury, asked for a ruling from the court as to whether the government could properly comment in closing argument on the appellant's failure to call four of the prospective defense witnesses to testify. The court ruled, without inquiry as to why the witnesses were not called or as to what their testimony would be, and over the appellant's objection, that such comment was proper.[2]

Following the court's ruling, the appellant's attorney, making the opening argument consistent with the local practice and apparently in an attempt to lessen the impact of the prosecutor's an-

---

1. Some of these witnesses were under subpoena and some appeared voluntarily. We find it unnecessary to make a distinction between them for the purposes of our analysis in this case. Apparently the trial judge in qualifying the prospective jurors on voir dire had the defense witnesses identified merely to determine whether any juror was acquainted or had any connection with them. The jurors were in no way advised as to what the testimony of any witness on the defense list would be.

2. At chambers the following colloquy occurred: (Mr. Allison for the defendant-appellant, Mr. Partin for the government)

MR. PARTIN: It would be the position of the United States that it would be proper in closing argument for the United States to note that there were certain witnesses subpoenaed on behalf of the defendant, these witnesses were not called to testify, which would permit the jury to draw an inference that their testimony would have been unfavorable to the defendant's position.

MR. ALLISON: I don't see that there is any relevance to it. Now, is it the U. S. Government's position that the Government feels that it has a right to comment on witnesses not only subpoenaed, but the whole prospective witness list?

\* \* \* \* \*

BY THE COURT: Not—he says that this—that this right enures to him by the fact that you told the Court that you had these witnesses and you had me to voir dire the jury predicated that these were going to be your witnesses.

It's his intention here to show or infer that you expected in some manner to gain by just alerting the jury that you had all these witnesses, but he says now that they're not entitled to make that inference but in fact they are entitled to make the inference to the contrary because they were not going to help you. You wanted to benefit from a long list, so now the other end of it says he ought to benefit because of the fact you don't use it. And that's the rationale, as I understand it.

MR. PARTIN: Yes, sir.

BY THE COURT: . . . But you alerted the Court that you had a—several witnesses ostensibly available to you which would assist you in the defense of this case and provide you with—with undergirding testimony for your position, and I voir dired the jury based on that showing of yours. Then you didn't use several of them. The United States feels that under those circumstances he has the right, legitimately, to comment about it.

\* \* \* \* \*

The Court rules that he may make comment in his closing argument concerning these witnesses who have been indicated as potential possible prospective witnesses by the defendant but who were not called to testify.

ticipated comments, advised the jury that he had not called the remaining defense witnesses because the government's case was too weak to convict the appellant. Then the prosecutor, in the closing argument, made the following statement to the jury:

> "Ladies and gentlemen, I'd like to point out to you, at the beginning of the trial the defendant and his counsel, Mr. Allison, indicated he had several witnesses to call, approximately four. Those witnesses were not called. The fact that they were not called would permit you to draw an inference that their testimony of those four individuals was unfavorable to the defendant and that's the reason they were not called."

The court gave no instructions to the jury on this point.

■■ An adverse inference is permitted from the failure of a defendant to call witnesses if they are "peculiarly within [his] power to produce" and if their testimony would "elucidate the transaction." Wynn v. United States, 130 U.S.App.D.C. 60, 397 F.2d 621, 625

(1967). *See also* United States v. Young, 150 U.S.App.D.C. 98, 463 F.2d 934 (1972); Gass v. United States, 135 U.S.App.D.C. 11, 416 F.2d 767 (1969). Most courts have carefully restricted application of the "uncalled or missing witness" rule to situations where both of these elements are present. *E.g.* Pennewell v. United States, 122 U.S.App.D. C. 332, 353 F.2d 870 (1965).[3] This two part analysis should be strictly applied. It first must be determined if the uncalled witnesses are peculiarly within the control or power of one party. The appellant urges that the four uncalled defense witnesses were not within his "control" because they were equally available to the government. "Availability" of a witness to a party must take into account both practical and physical considerations. Stewart v. United States, 135 U.S.App.D.C. 274, 418 F.2d 1110, 1115 (1969). Thus whether a person is to be regarded as peculiarly within the control of one party may depend as much on his relationship to that party as on his physical availability. Milton v. United States, 71 App.D.C. 394, 110 F.2d 556 (1940).[4] In the present

---

3. In some cases both sides have been allowed to argue adverse inferences to the jury in situations where both had equal ability to produce the witness and it was debatable which party might have been expected to call a witness. A review of these decisions reveals that the testimony of the disputed witness in each case was obviously essential to the full development of the facts. E. g., United States v. Jackson, 257 F.2d 41 (3d Cir. 1958). No analogous situation exists in this case.

4. A review of the case law does not reveal a uniform definition of the types of relationships that should be considered in this analysis. In Milton v. United States, 71 App.D. C. 394, 110 F.2d 556 (1940), an employer-employee relationship was held to be sufficient to make the uncalled witness peculiarly within the control of the appellant. Although it has been stated that the employer-employee rule is generally applicable in civil cases (See Annot. 68 A.L.R.2d 1072 (1957)), *Milton* is a criminal case. One ear-

ly case, cited by most recent decisions concerning the uncalled witness rule, is Egan v. United States, 52 App.D.C. 384, 287 F. 958 (1923), where the court stated:

> "The general rule is that no such inference may be drawn by a jury because a party fails to call as a witness one who is in a legal sense a stranger to him and is equally available to the other side. Jordan v. Austin, 161 Ala. 585, 50 So. 70; Cullum v. Colwell, 85 Conn. 459, 83 A. 695; State v. Fitzgerald, 68 Vt. 125, 34 A. 429; Wood v. Agostines, 72 Vt. 51, 47 A. 108; Briody v. The Persian Monarch (D. C.) 49 F. 669; The Oregon, 9 Cir., 133 F. 609, 629." Hayden v. New York Railway Co., 233 N.Y. 34, 134 N.E. 826.

As mentioned earlier, practicality is the touchstone in this situation. There may be a relationship of such description (legal, personal, practical or perhaps even social) between a prospective witness and one party that would in a pragmatic sense make his testimony unavailable to the opposing party regardless of physical availability. Obviously

case, all four of the uncalled witnesses were present in the courtroom. The court did not specifically find that there was a special relationship of any kind between the appellant and any of the four prospective defense witnesses. Nor is there in the record any indication of relationship.

In addition to the element of control, it must be found, before an adverse inference may be drawn, that the anticipated testimony of the uncalled witnesses will "elucidate the transaction." The record in this case is barren of any inquiry by the court into the probable testimony of the four uncalled witnesses. As the court did not acquaint itself with the circumstances or conditions which would justify an adverse inference surrounding the failure of the defense to call the four witnesses, and as a specific objection was made by defense counsel to the court's ruling, we think it was error to allow the government to advise the jury that an adverse inference could be drawn. The resulting prejudice from such comments is compounded in this case by the circumstantial nature of the evidence against the appellant. The jury was already required to deal with inferences from the circumstantial evidence on which the government's case was almost entirely based. We are not, therefore, prepared to say that the government's comments on the failure of the defense to call the four witnesses was harmless or innocuous. Indeed, such comments would appear to have been clearly damaging to the defense.[5]

■ When counsel for either side intends to argue to the jury for an adverse inference to be derived from the absence of witnesses, an advance ruling from the trial court should be sought and obtained, as was done here. The trial court, however, before ruling on the appropriateness of such argument, must make the pertinent inquiries and findings indicated above. Furthermore, if such argument is to be permitted, and the operative facts appear to be in doubt or in dispute, an instruction should be given to the jury defining the conditions under which the inference might properly be drawn. Gass v. United States, 135 U.S.App.D.C. 11, 416 F.2d 767, 775 (1969). By these practices the risk of vitiating the entire trial by improper argument as to the absence of witnesses can be obviated. Although, as stated, the prosecution in this case did ask for and receive a favorable advance ruling from the trial judge before making its comments to the jury, the trial judge unfortunately failed, despite appellant's specific objection, to make the necessary inquiries or determinations to support his ruling permitting the comments to be made.

We therefore reverse appellant's conviction and remand for a new trial.

the potential situations are too numerous and varied to make possible a comprehensive and definitive enumeration. The trial judge, using his sound discretion, must determine the sufficiency of the relationship by ascertaining the practical effect of any connection between the prospective witness and the party against whom the inference is sought to be used as well as the materiality of the witness' testimony; or conceivably in some situations these issues should be left to the jury under proper instructions.

5. The harmless error approach is available where the facts clearly point to the defendant's guilt. *E. g.* United States v. Jones, 140 U.S.App.D.C. 1, 433 F.2d 1107 (1970) (fingerprints on a rifled money box not accessible to the public). We do not regard the evidence in this case to be of such cogency or strength.