**UNITED STATES v. RAUB.**

No. 9880.

United States Court of Appeals
Seventh Circuit.

Oct. 19, 1949.

Kenneth N. Parkinson, Richard L. Tedrow, Washington, D. C., George R. Jeffrey, Indianapolis, Ind., Edward B. Raub, Jr., Indianapolis, Ind. (White, Wright, Raub & Forrey, Indianapolis, Ind., of counsel), for appellant.

B. Howard Caughran, United States Attorney, Indianapolis, Ind., Elba L. Branigin, Jr., Assistant United States Attorney, Maurice W. Graston, Assistant United States Attorney, Indianapolis, Ind., for appellee.

Before MAJOR, Chief Judge, and KERNER, and DUFFY, Circuit Judges.

KERNER, Circuit Judge.

Defendant appeals from his conviction on a charge of wilfully attempting to evade payment of a large part of his income and victory taxes for the year 1943 by filing a false and fraudulent tax return. He was sentenced to five years' imprisonment and to pay a fine of $3,000. He admits developing and putting into operation a plan calculated to postpone the incidence of his tax on certain items of his income until a later year, and contends that such plan was worked out with advice of counsel and was in all respects legal. Errors asserted on this appeal relate to the denial of his motion for acquittal and to certain portions of the instructions to the jury.

There is little if any controversy as to the mode by which defendant sought to defer the incidence of his tax and the steps by which the plan was put into effect. He was engaged in several lines of business including an 80% interest in a partnership with one Helen Smith in an agency for the distributorship of trucks and tractors in Chalmers, Indiana. He also operated an insurance agency in which one Ora Rickenbaugh was employed. The partners sought to defer the taking of profits from the sale of trucks and tractors by what they described as a change in their investment from trucks to real estate on which there would be no profits until the sale of the latter. According to defendant's own description of the plan, Rickenbaugh was to obtain a dealer's license and acquire at cost certain trucks from the partnership. She would then sell the trucks to the trade at O.P.A. prices, repay the partnership the purchase price thereof from the proceeds of sale, and invest the profits in farm lands in the Chalmers area, re-selling the farm lands to the partnership at a loss amounting approximately to the difference between the cost of the trucks to her and the selling price thereof, less a reasonable profit to be retained by her. Defendant asserts that before this plan was put into operation, he and his partner sought and obtained the advice of lawyers, a tax consultant, and two representatives of the Collector's Office of the Bureau of Internal Revenue.

In accordance with this plan, Rickenbaugh purchased twenty-one trucks from the partnership approximately at cost, and then sold them for a profit. Defendant states that he "assisted in effecting substantially all of the sales." The record discloses that, in fact, while Rickenbaugh acquired and conveyed title to the trucks in her own name, payment therefor was made from the proceeds of the sales to others, as made, and that she at no time had funds of her own with which to finance the purchases in her own behalf. The record further discloses that in the sales of the trucks all negotiations were carried on by defendant, and that in many cases purchasers did not even know Rickenbaugh or understand why her name was used in connection with their purchases.

With reference to the purchases of real estate the record discloses a similar domination of the transactions by defendant. He chose the farms to be purchased; he negotiated with the owners for their purchase; where necessary, he furnished funds to cover checks on Rickenbaugh's account as down payments; title was taken in his name rather than in the name of both partners; he negotiated a loan in his name to make payment.

There is no dispute as to these facts as to all of the transactions incidental to the execution of the plan admittedly adopted for the purpose of enabling the partnership to "change the form of its investment from trucks to land and defer or postpone the question of tax determination until the land, or new form of investment was disposed of." There is serious difference of opinion as to the construction to be placed upon these facts. Defendant contends that the plan was adopted only after he had been fully advised of its legality after full disclosure of its details. The Government contends that the entire plan was simply a subterfuge to enable defendant to defeat and evade a large part of his taxes for the year 1943; that, in effect, Rickenbaugh was acting as the agent of defendant throughout, and the net result of the series of transactions was a profit taken in her name amounting to at least $17,286 on the sale of the twenty-one trucks, followed by

the purchase in her name of two farms at a cost of $32,000 which she in turn sold to defendant for $14,000, or a paper loss of $18,000 on the series of transactions, thus concealing the profit of the partnership on the trucks in approximately that amount, so that defendant's tax return for the year 1943 which did not reflect his share in this partnership profit was in fact false and fraudulent.

Under the facts disclosed we think there can be little doubt of the sufficiency of the evidence to sustain a verdict of guilt, hence that defendant's motion for acquittal was properly denied. The jury might well infer that the elaborate scheme by which paper title to the trucks and farms was put into Rickenbaugh without the payment by her of any money of her own but with the entire series of transactions financed by funds supplied by defendant or the partnership or out of the proceeds of the sale of partnership property was nothing but a subterfuge to defeat taxes legally due. And the jury might well conclude from the testimony of four of the persons whose alleged advice as to the legality of the transactions was relied upon as a defense that the facts were not fully disclosed to them. The tax consultant testified that he understood that the transactions between defendant and Rickenbaugh were to be at arm's length; one of the attorneys stated that he thought they were to be in good faith and that the only question defendant asked him was whether there was anything to prevent his transferring trucks to an employee; one of the employees of the Collector's Office clearly was not qualified to render advice and told defendant so, referring him to a second one who testified that he advised that transactions of the nature described would be subject to further investigation to show whether or not they were legal.

We conclude that if the only question here were as to the sufficiency of the evidence we would have no difficulty in affirming the judgment of conviction. However, a much more serious and difficult question is presented with respect to the instructions under which the case was submitted to the jury.

Defendant states that the instructions were delivered orally. He made no objections to them as delivered, and in his brief he concedes that a strict application of Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., would preclude argument on this issue but he contends that the merits of the appeal are sufficient to justify this court in the exercise of its discretion under Rule 52(b) which provides that plain errors or defects may be noticed although they were not brought to the attention of the court.

■■ It appears to be generally established now that—Rule 30 notwithstanding, in criminal cases involving life or liberty of a defendant, an appellate court may notice plain and seriously prejudicial error in the instructions, even though it was not called to the attention of the trial court. Williams v. United States, 76 U.S.App.D.C. 299, 131 F.2d 21; Cave v. United States, 8 Cir., 159 F.2d 464; United States v. Monroe, 2 Cir., 164 F.2d 471; United States v. Perplies, 7 Cir., 165 F.2d 874; and Screws v. United States, 325 U.S. 91, 107, 65 S.Ct. 1031, 89 L.Ed. 1495, 162 A.L.R. 1330. Such errors must, however, be substantial and capable of resulting in miscarriage of justice to warrant the reversal of a judgment of conviction based on ample evidence. We must not lightly invoke Rule 52(b). United States v. Perplies, supra. With these principles in mind we shall examine the instructions to determine whether or not they contained such substantial error as to prejudice the jury in its determination of defendant's defense.

■ There is, of course, no doubt as to the legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether to avoid them by means which the law permits. Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355. Defendant frankly admitted that such avoidance or deferment of taxes was the purpose of the series of transactions entered into, and the court gave an instruction as to his right to minimize his taxes by legal means. This instruction was adequate unless its effect was overbalanced or upset by other portions of the instructions to which objection is here made.

The offense charged in the indictment was that defendant wilfully and knowingly attempted to defeat and evade a large part of the income and victory taxes due for the year 1943 by filing and causing to be filed a false and fraudulent tax return stating that his income for that year was $12,547, on which there was due a tax of $3,310, whereas in fact, his income for the year was the sum of $25,577, on which there was due a tax of $9,911, a violation of § 145(b) of the Internal Revenue Code, 26 U.S.C.A. § 145(b).

■■ It has been held that the filing of a fraudulent return in itself constitutes an attempt to evade a tax. Rick v. United States, 82 U.S.App.D.C. 101, 161 F.2d 897, 898; United States v. Rosenblum, 7 Cir., 176 F.2d 321. Thus the question of fraud appears to be the essential issue in the case, and such question must be submitted to the jury under proper instructions; the court may not direct a verdict of guilty on it no matter how conclusive the evidence. United Brotherhood, etc., v. United States, 330 U.S. 395, 408, 67 S.Ct. 775, 91 L.Ed. 973. See also Bollenbach v. United States, 326 U.S. 607, 611, 66 S.Ct. 402, 90 L.Ed. 350; United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381. Defendant contends that the challenged portions of the instructions violated this rule of law. These principally relate to the court's reference at three points to the undisputed facts:

"You should consider that evidence [relating to defendant's consultation with counsel] in connection with all the other evidence in determining whether or not he wilfully and intentionally entered into this scheme for the purpose of evading his taxes. That is one of the elements that you should consider in determining that question. That is not binding, however, gentlemen, upon you, *if you find that he did this thing, the thing that he is charged with having done—and there seems to be no difference in the evidence at all as to what was done*—with the purpose and intent on his part of evading the taxes, which he otherwise would have had to pay."

"It is a very simple question. As I say, *the question that is for you to determine, the facts are undisputed, is whether or not this was done wilfully.*"

"I am not going to comment on the evidence in this case. It has taken quite a little while to introduce it, but you heard it. *It isn't a question of whether or not this Defendant acted wisely* as a business man, *but it is a question of whether or not he did these things that he is charged with having done, and about which there is no dispute, with intent to evade his taxes. That is the question,* gentlemen, which you must determine, and determine it by your verdict." (Emphasis added.)  ·

We think the fair interpretation of these instructions is that they assumed that there was only one issue to be decided by the jury, namely, that of intent, and, in effect, they amounted to the direction of the verdict, on the issue of falsity and fraudulence. But this was not conceded by defendant, and he was entitled to the jury's determination instead of having the issue taken from it. The Government contends that the challenged instructions were harmless inasmuch as the "facts" were not in dispute and could have been stipulated, and that the only controversy was over the question whether defendant did the things described for the purpose of evading and defeating payment of his income taxes. We do not so construe the record. The basic controversy in this case centered around the issue whether the entire scheme was a sham and a fraud—defendant admitted that the plan was adopted and developed for the purpose of deferring payment of taxes. Hence there was a strong likelihood that the repeated references to the lack of dispute in facts, except with respect to purpose or intent, would tend to overshadow instructions elsewhere given as to defendant's right to minimize taxes by legal means. Cf. Bihn v. United States, 328 U.S. 633, 66 S.Ct. 1172, 90 L.Ed 1485; Heindel v. United States, 6 Cir., 150 F.2d 493. The effect of this was to deny him the right, adverted to in Bollenbach v. United States, 326 U.S. 607, 614, 66 S.Ct. 402, 90 L.Ed. 350, to have his guilt or innocence found by a jury according to the procedure and standards appropriate for criminal trials in the federal courts. We think this error so affects the substantial rights of defendant as to warrant our noticing it in spite of his failure to call it to the attention of the trial court. United States v. Ward, 3 Cir., 168 F.2d 226; Morris v. United States, 9 Cir., 156 F.2d 525.

Judgment reversed, and cause remanded for new trial.