**Nathan SHURMAN, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 15647.**

United States Court of Appeals
Fifth Circuit.

May 8, 1956.

Frank W. Oliver, Chicago, Ill., for appellant.

William O. Braecklein, William N. Hamilton, Asst. U. S. Attys., Dallas, Tex., Heard L. Floore, U. S. Atty., Fort Worth, Tex., for appellee.

Before RIVES, TUTTLE and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

Appellant, Nathan Shurman, was tried before a jury on an indictment charging him with making four transfers of marihuana (July 7, 11, 13 and 14, 1953) to William Finley, an agent of the Fed-

eral Bureau of Narcotics, not in pursuance of a written order issued in blank for that purpose by the Secretary of the Treasury, in violation of 26 U.S.C.A. § 2591(a). During the trial the first count, covering the transfer of July 7th, was dismissed, and appellant was convicted upon jury verdict on the remaining three counts and sentenced to two years imprisonment on each, sentences to run consecutively. The points chiefly relied upon by appellant are that the court below erroneously modified appellant's requested instruction on the defense of entrapment, that the court erred in refusing appellant's requested instruction on the definition of marihuana as set forth in 26 U.S.C.A. § 3238(b), and that the court below committed error in failing to instruct the jury concerning inferences which might be drawn from the failure of the Government to produce its informer or special employee as a witness.

Through John Harper Cobble, alias Buddy Harper, special employee of the Bureau of Narcotics, Agent Finley made contact with and purchased quantities of marihuana from appellant on four occasions. Cobble was present at three of these transactions. Agent Finley and appellant were the only witnesses who testified concerning these transactions and the substance and tenor of their testimony was, almost without exception, in sharp conflict.

Finley said that, at each transfer the appellant stated to him that the substance was marihuana. On the occasions of the first and second transfers, which took place on the street in front of Finley's apartment, Shurman said that he was planning a trip to Corpus Christi for an additional supply of marihuana and that, after this trip, he could provide any amount of the drug Finley might desire. The third and fourth transfers took place in Shurman's apartment in a downtown Dallas hotel. At the third transaction Shurman said he had just returned from Corpus Christi, and he showed Finley a sack of substance which he said was marihuana obtained by him there. Also,

at this time appellant removed the marihuana purchased by Finley from a tin can and put it into a sack, explaining that he needed the can for future sales.

Shurman testified, on the other hand, to a very different state of facts. According to him, he was a musician, out of work and in financial straits. He had worked in Corpus Christi before coming to Dallas in 1953 to look for work. Soon after arriving in Dallas he was contacted by Cobble, who was also a musician and with whom Shurman had previously been acquainted. Cobble proposed that Shurman could make some money, which he knew Shurman needed badly in order to bring his pregnant wife from Corpus Christi to Dallas and to meet pressing obligations. In the beginning Cobble would not disclose the method of making this money, except that he stated that it would be "slightly illegal." The proposed transaction was so characterized on more than one occasion in the early talks. Shurman at first refused, but, under pressure of his immediate needs, he finally consented to use his automobile and make a delivery for Cobble. Appellant stated that it was not until after the first delivery that he was told that the package he delivered contained marihuana. It was the count covering this transaction which was dismissed.

According to appellant, the second transfer was made by him after further persuasion on the part of Cobble and again because of his financial stress. Finally, appellant stated that the transfers which took place in his hotel room were of packages left by Cobble for delivery when called for by Finley. He claimed that, on all occasions, the marihuana transferred belonged to Cobble and that his activities were the product of overtures and promises of quick money by Cobble.

On August 7, 1953, appellant was arrested and taken to the Detective Division of the Dallas Police Department. Agent Finley and a Dallas detective testified that, at this time, Shurman voluntarily admitted that he had made the al-

leged sales and that the marihuana had belonged to him, but he refused to sign a statement to this effect.

Appellant argues, first, that the court below committed reversible error in modifying an instruction on entrapment given by the court at the behest of appellant. Since we are not in agreement on that claimed error, we pretermit its consideration, and consider first those matters on which we do agree.

■ The second error relied on was based upon the refusal of the court below to instruct the jury on the definition of marihuana as contained in the statute.[1] Appellant cites that case as authority for the proposition that it was reversible error not to give the instruction in this case. We do not think so. The portion of the opinion relied upon must be read in connection with the facts then before us and, even there, we did not hold that failure to give the instruction was reversible error.[2] The placing of the statutory definition before the jury trying the issues of this case would have served no useful purpose. According to Finley's testimony, which the jury obviously accepted, he bargained for and received four separate purchases of marihuana; appellant stated that he was delivering marihuana and he admitted later to a state officer that the marihuana which he had delivered was his own.

These deliveries were exhibited in evidence and were submitted to a government chemist who testified categorically that each of them was marihuana. The statutory prohibition which appellant was convicted of violating made it unlawful for any person to transfer "any marihuana" without observing legal tax requirements. Appellant offered no evidence tending to dispute that the substance delivered was marihuana. The only possible relevance of the definition contained in the statute arose from the fact that appellant's attorney conducted an extended cross-examination of the government chemist, employing in a skillful and adroit manner, a multiplicity of chemical terms, in an obvious effort to drive the witness from his statement that the substance was marihuana and to an admission that the substance belonged in the category of those portions of the stalks, oil or cake made from the seeds, etc., declared by the statute as not included within the definition of marihuana. But appellant did not succeed in his effort. He merely asked questions which hinted at the exclusions, but he did not obtain any answers raising a suspicion that the substance belonged in the categories excluded from the Act rather than those embraced in the Act. It was not error, therefore, to refuse to bring this cumbersome and confusing definition before the jury because there was no issue to be decided by the jury on which it could have bearing.

Another error argued by appellant is based upon the contention that, after he invoked, through his testimony, the defense of entrapment, the Government

---

1. Sec. 3238(b) of 26 U.S.C.A., which we reproduced in our decision of Shurman v. United States, 5 Cir., 1955, 219 F.2d 282, 292, and characterized as "complicated and confusing."

2. The facts before us in that case (note 1, supra) were that this appellant and one Chebatt were tried and convicted of unlawfully obtaining 2,047 grains of marihuana on July 22, 1953 in Tarrant County, Texas. A state officer had stopped appellant and Chebatt and, upon subsequent search of appellant's car, found that amount of marihuana in the trunk. Appellant, claiming that he had no knowledge of the presence of the marihuana but suspected that it was planted in his car by a Juarez cab driver with whom he had an argument, moved to suppress the evidence because of illegal search and seizure. He also claimed that his evidence successfully combated the statutory presumption that he had obtained the marihuana in the Northern District of Texas. We discussed at length the question of illegal search and seizure and also of venue, and finally reversed the conviction on the venue question alone. What was said about granting an instruction giving the statutory definition of marihuana was said by way of guidance for a future trial of that case under its own facts.

failed to carry the burden placed upon it to show a predisposition on the part of appellant to commit the offense charged, unbeguiled by improper actions of the government employees. In this connection, appellant argued that the Government should have produced Cobble as a witness after requested by him to do so; and, when it failed to produce him, the jury should have been instructed that they might infer that the witness' testimony would have been unfavorable to the Government.

Immediately before the trial, appellant moved the court to require the Government to produce Cobble as its witness on the ground that he was on probation under a sentence imposed upon him by the District Court for the Northern District of Texas in 1954. The Government attorney stated that an attempt would be made to locate and produce Cobble. At the close of the case for the prosecution, the Government introduced Eli Nollette, Federal Probation Officer, who testified that Cobble was under his supervision, and that he had attempted without success to locate him immediately upon appellant's request. He showed that he made inquiry at Cobble's place of employment and at his residence and could get no line on him or his whereabouts. He further testified that Cobble had freedom of movement limited only by the requirement that he must file a written report each month, in addition to which the witness himself tried to talk with Cobble personally about once a month. His testimony disclosed without dispute that the Government had no hold upon Cobble which enabled it to locate him and bring him to court upon such short notice.

■ The facts here do not bring the situation within the ambit of the authorities justifying the drawing of an unfavorable inference from failure to produce.[3] Cobble was equally available to

both parties. Appellant had made no effort to locate him or procure his attendance as a witness and cannot put the Government in an unfavorable light by his eleventh-hour motion.[4]

The situation presented was quite similar to that before the court in United States v. LaRocca, supra, a narcotics case in which the government informer or special employee, who had functioned much as Cobble here and had been present throughout the illicit transaction charged, was in jail at the time of the trial. It was held that no unfavorable inference against the Government could be drawn from its failure to call the witness, because he was equally available to either side. The same is, in our opinion, true here.

■ The testimony of Finley amply established appellant's predisposition to commit the offense charged and sufficed to rebut the defense of entrapment. During the course of the four transfers in July, Shurman repeatedly mentioned to Finley that he was either going to Corpus Christi for a new supply of marihuana or had just returned with a new stock. At the third transaction, the agent was shown a large bag of what Shurman said was marihuana he had brought from Corpus Christi; at this time Shurman transferred the marihuana he was passing to Finley from a can into a bag, stating that he needed the can for future sales. Moreover, the first transaction, dismissed from the indictment by the Government, amply disclosed the criminal nature of all the proceedings and took from appellant the cloak of innocence if he ever had any. The entire evidence depicts appellant as a man, not only willing, but possessed of a preconceived design, to commit offenses against the law as occasions presented themselves. The jury had a right to consider Finley's testimony as reasonable and

3. Cf. Graves v. United States, 1893, 150 U.S. 118, 14 S.Ct. 40, 37 L.Ed. 1021; Ford v. United States, 5 Cir., 1954, 210 F.2d 313; 2 Wigmore on Evidence, § 286, p. 166; Boyer v. The Merry Queen, 3 Cir., 1952, 202 F.2d 575.

4. Cf. Billeci v. United States, 1950, 87 U.S.App.D.C. 274, 184 F.2d 394, 24 A.L.R.2d 881; United States v. La Rocca, 2 Cir., 1955, 224 F.2d 859, and cases cited therein; and 3 Am.Jur., Trial, § 695, p. 531.

that of appellant as unreasonable, and to accept what Finley said and reject what Shurman said.[5]

■ Thus far, Judges RIVES and TUTTLE concur in the foregoing opinion. They are, however, of the further opinion, for reasons separately stated by Judge RIVES, Judge TUTTLE concurring, that the district court's comments regarding appellant's basic defense of entrapment constituted prejudicial error requiring reversal of the judgment of conviction. Judge CAMERON thinks otherwise, and expresses his views in dissent as follows:

The jury had been fully instructed and had retired from the courtroom when it was returned and the requested instruction was read to the jury. This took place after an extended colloquy between appellant's attorney and the court, in which appellant took exception to the charge on entrapment which the court had given, contending that the court had erred in emphasizing that appellant "was claiming that the entrapment proceeded from false, fraudulent representation made by Government people"; when appellant's real contention had been that "the representations that constituted the entrapment are the representations to the defendant that he can make some money if he will deliver some packages." [6]

The court could well have refused altogether to bring the jury back and give the requested charge for the jury had been fairly and fully instructed on the defense of entrapment in its oral charge.[7] More than that, the court had, at the conclusion of the oral charge but before the

5. Goss v. United States, 5 Cir., 1947, 161 F.2d 347; Applebaum v. United States, 5 Cir., 1947, 164 F.2d 974.

6. The supplemental charge in question is set out at this point, the italicized portion being the instruction requested in writing by appellant and the residue being the court's own statement:

"Gentlemen of the Jury, the defendant's counsel points out a matter that the Court had not considered as being a part of his defense. He does not insist that the defendant was induced by falsehood to make these sales, but that he was induced to make the sale by reason of Buddy Harper Cobble telling him he could make some money, to-wit, fifty dollars, by making the sale.

"It is the Court's view that offering a man money to do something that is in violation of the law is not a defense, however, in that same connection we will read you a charge that the defendant has requested:

"*The defense of entrapment is one defense in law. It arises under certain circumstances where a defendant is charged with the unlawful sale of marijuana and he was not and never had been a dealer in marijuana and had never sold any before nor connived nor conceived an intention to do so, but was induced by the government agent to sell to him, the whole transaction being a device of the government agent who furnished the money to entrap, arrest and prosecute the defend-*

*ant, then the jury is instructed to find the defendant not guilty.*

"We give you this charge as the law, that we have read, but in connection with that, we don't think that one man can give another man, or hold out an offer to him to get him to commit a crime, and that he can plead that as a defense."

7. Here is the charge originally given by the court:

"Now, if you believe that Buddy Harper, acting with Finley, or Finley and Buddy Harper acting together, did by false and fraudulent representations to the defendant cause him to engage in the handling and sale of marijuana as charged in the indictment when otherwise he would not have done so, then in such event you will acquit the defendant.

* * * * *

"Entrapment has been defined by standard authority in words substantially as follows, and it may be helpful to you in grasping the term:

"'One who is instigated, induced or lured by an officer of the law or other person for the purpose of prosecution into the commission of crime which he had otherwise no intention of committing, may avail himself of the defense of entrapment. Such defense is not available, however, where the officer or other person acted in good faith for the purpose of discovering or detecting a crime and merely furnished the opportunity for the commission thereof by one who had the requisite criminal intent.'"

jury retired, read an instruction requested by appellant.[8]

It is clear therefore, that before the episode under discussion arose, the jury had been charged accurately on entrapment, in language which was not only liberal to appellant but which related the law to the facts as he claimed them to be. There was no necessity for an additional charge on entrapment, and it would not have been error if the court below had refused to bring the jury back and give the supplemental charge set forth in Note 6, supra. The most that can be said in support of appellant's contention is that the remarks of the court before and after reading the requested charge tended to neutralize that charge. Since the matter had been fully covered in the other charges, the giving of the supplemental charge, rendered sterile and nugatory by the court's additions thereto, would not be reversible error.

Appellant asserts that the portion of the requested charge added by the court below is error under our decision in Hamilton v. United States, 5 Cir., 1955, 221 F.2d 611. What was involved there is quite different from what we have before us here. The error there claimed grew out of the charge given by the court in the first instance.[9] We held this charge, taken as a whole, to be "equivocal * * * on a basic issue." Since that was the only charge relating to entrapment, we held that the refusal to give an instruction requested by appellant properly setting forth the law on entrapment was "tantamount to denying the defendant a jury trial upon the issue of entrapment."

We do not have such a situation here. The charge originally given by the court amply and fairly covered the defense and had been supplemented by a requested charge repeating the law in another form. The jury had a clear statement of the law before it; and even if, as claimed by appellant, what the court added to the supplemental instruction requested by appellant had the effect of "vitiating" the requested instruction, no harm resulted because the charges already given amply covered the subject.[10] The tale told by appellant as the basis for his entrapment plea was an extremely unreasonable one, and the jury manifestly found it so. I think the point is without merit.

For reasons separately stated by Judge RIVES, Judge TUTTLE concurring, the judgment is reversed and the cause remanded.

8. "You may retire—but first, I have one requested instruction from the defendant.

"The jury is instructed that if you find from the evidence that the defendant was supplied with marijuana by a special employee of the government whose purpose in supplying said substance was to cause the defendant to transfer the same to the narcotic agent with whom the special employee was working, and if acting as the agent of the special employee under those circumstances the defendant did sell the marijuana to the government agent then you would find the defendant not guilty.

"You may retire and consider of your verdict."

9. Set out in 221 F.2d 613–614.

10. We are not indicating that the court's remarks were erroneous, particularly when considered in the context of the entire discussion had with appellant's counsel. It was being argued that the offer of money to a man in need of it constituted a sort of magic inducement which ought to exonerate, even though appellant admitted that the three counts upon which he was convicted related to transfers made by him after he knew that he was delivering marihuana in violation of law. The money here involved did not constitute an instance of "extraordinary temptations or inducements" as referred to in the Hamilton case, supra. (The four sales involved only $130.00.) The mere use of money by the government agents would not constitute entrapment, for, as everyone knows, desire for money is the usual motivating cause of crimes of this nature.

Even assuming, therefore, that appellant was innocent at the time of the first transfer, he had become a willing participant in criminal transactions for money after he knew what he was doing was in violation of law. This seems to be the idea which the court below expressed rather awkwardly in the words interpolated by it.

Judge CAMERON concurs in the part of the opinion indicated, but dissents from the reversal and thinks that the judgment should be affirmed.

RIVES, Circuit Judge.

Judge TUTTLE and I are constrained to vote for reversal because of the court's prejudicial comments regarding appellant's basic defense of entrapment. We agree that no prejudicial error resulted from the court's failure to instruct as to the statutory definition of marihuana, in accordance with this Court's decision in Shurman v. United States, 5 Cir., 219 F.2d 282, and from its further refusal to charge as to any adverse inference which might be drawn from the Government's failure to produce Cobble to testify at the trial. We agree further that the remarks of the court, [footnote (6), Judge CAMERON'S opinion], both before and after reading the appellant's requested charge, "tended to neutralize that charge" and render it "sterile and nugatory." Upon this record, however, we are of the firm opinion that such remarks were also positively erroneous under our decision in Hamilton v. United States, 5 Cir., 221 F.2d 611, and we cannot agree with the conclusion that "no harm resulted because the charges already given amply covered the subject."

The court's initial charges on the entrapment defense, except for the quoted definition, were obviously misleading and inaccurate, for the original charge [footnote (7), Judge CAMERON'S opinion] was premised on the wholly inapplicable theory of inducement by "false and fraudulent representations," an issue admittedly not in this case; and the requested instruction previously given was predicated purely on a defensive "transfer by agency" theory, obviously not pertinent to the applicable defense of entrap-

ment by money inducement. [Footnote (8), Judge CAMERON'S opinion]. But even accepting the debatable assumption that these initial charges of the court "fairly and fully" instructed the jury on appellant's main defense of entrapment by inducement of money reward, we cannot reconcile the conclusion that the error in the court's conflicting and equivocal, supplemental instruction [11] was harmless with the universally accepted rule that "a conviction ought not to rest on an equivocal direction to the jury on a basic issue", Bollenbach v. United States, 326 U.S. 607, 613, 66 S.Ct. 402, 405, 90 L.Ed. 350; Hamilton v. United States, supra, 221 F. 2d at page 615; for, with personal liberty at stake, we are not authorized to speculate from conflicting instructions as to whether the jury followed the correct or the erroneous portion of the supplemental charge. Cf. Kotteakos v. United States, 328 U.S. 750, 763–765, 66 S.Ct. 1239, 90 L.Ed. 1557.

■■ Appellant's defense of entrapment inducing each of the marihuana transfers, the whole scheme originating with Cobble with appellant's participation prompted by his impecunious circumstances and his concern for his pregnant wife, was not only the basic issue in the case, but was his only defense of any merit or substance. Appellant's testimony was sufficient to create a jury issue on his basic defense of entrapment, and the issue of whether his testimony was "unreasonable" was primarily for the jury to resolve upon correct instructions from the court.

In our view, appellant was severely prejudiced in his only real defense by the trial court's inadvertent adherence to its own misconception of the law applicable to entrapment induced by a money consideration. See Hamilton v. United States, supra.[12] In view of the frequent-

---

11. Of course, we cannot accept the comments in footnote (10) of Judge CAMERON'S opinion as justifying the district court's remarks, especially in view of our reversal of the same district court for a strikingly similar statement in Hamilton v. United States, 5 Cir., 221 F.2d 611, 613–614.

12. The eminent trial court apparently did not have an opportunity to reconsider its supplemental instruction in the light of this Court's decision in the Hamilton case, supra, for counsel for the Government upon oral argument conceded that, at the time of the trial, he was unfamiliar with that decision, and the record does

ly reiterated admonition that it is not our province to pass upon guilt or innocence, but only to review errors of law, it is impossible for us, upon this record, to conclude with any degree of assurance that the jury was not unfairly swayed in its finding of guilt by the court's partially erroneous supplemental instructions. Kotteakos case, supra.

CAMERON, Circuit Judge (dissenting).

My dissent extends to the portion of the opinion written by Judge RIVES and requires these additional observations. The rejection of the lower Court's charge by the majority results, in my opinion, from the attempt to isolate the refused instruction and focus undivided attention upon it, ignoring the residue of the Court's charge. This is, of course, not permissible:

"In examining the charge of the Court for the purpose of ascertaining its correctness in point of law, the whole scope and bearing of it must be taken together. It is wholly inadmissible to take up single and detached passages, and to decide upon them without attending to the context, or without incorporating such qualifications and explanations as naturally flow from other parts of the instructions."[1]

Nor should a criminal appeal be turned into a quest for error such as it is likely to be if a refused instruction is segregated and magnified out of all proportion to its true relation to the charge as a whole and its importance in connection with the evidence actually before the court and jury. A charge, perfect in every word and sentence standing alone, probably has never been given. Every word and sentence should be given a common sense interpretation in their relationship to the entire charge and to the issues of the case and the evidence adduced to support them. Viewed against the entire charge given, it is impossible for me to conceive that the jury found itself laboring under the confusion which seems to disturb the majority.

Its repudiation of the action of the Court below, in my judgment, comes within the condemnation of the language of this Court in Patterson v. United States, 5 Cir., 1951, 192 F.2d 631, 633:

"As to the claimed errors in the charge, we are convinced that, except perhaps from the strained and hypercritical point of view once obtaining in the review of criminal cases but now no longer possible in federal courts, the action of the trial court in giving and refusing charges, was unexceptionable. We are convinced, too, from a consideration of the charge as a whole, rather than from a view alone of isolated portions of it, that appellant was afforded a fair trial with full opportunity to defend himself."

Particularly is this statement true when the facts are considered upon which the defense of entrapment was based. It must be remembered that appellant made four deliveries of marihuana in quick succession, and that, after the first delivery, at least (as to which the prosecution was dismissed), he knew he was participating in the sale of marihuana in violation of law. The temptations placed before him, consisting of small sums of money, were not "extraordinary temptations or inducements" such as we held to be an essential ingredient of entrapment in the Hamilton case.[2] But the majority intimates that any money inducement was likely to cause appellant to succumb because of his "impecunious condition".

In that connection it is proper to consider that appellant had, before the trial

---

not reveal that counsel for appellant called the court's attention to the obvious conflict between the court's remarks and the rule there set forth.

1. Spring Co. v. Edgar, 1878, 99 U.S. 645, 659, 25 L.Ed. 487. And see Boyd v. United States, 271 U.S. 104, 107, 46 S.Ct. 442, 70 L.Ed. 857.

2. 221 F.2d at page 614.

in the Court below on charges involving an aggregate of 3,155 grains of marihuana, been found guilty by a jury of obtaining 2,047 grains of marihuana within two weeks of the transfers here involved.[3] In the handling of these two cases before this Court, appellant had availed himself of the services of two Chicago attorneys who are, as is manifest from the technical skills employed,[4] experts in the handling of such cases,— whose services obviously would not be available to one suffering from the impecuniosity attributed to this appellant by the majority.[5]

It is proper that we take note of the fact that, while this appellant is at large and free to ply the trade two juries have found him guilty of participation in, this insidious business is increasing by leaps and bounds. This Court cannot function as in a vacuum, but must perform its duties as a part of the swift moving stream of life and in recognition of things as they are. Within ten years narcotic arrests of persons under twenty-one years of age in one of the large states of the Union have increased 2300 per cent.[6]

That is a situation known to us, with respect to which we are not permitted to be blind, and concerning which we cannot fail to bear responsibility. In my opinion, those hapless victims are entitled to a share of our solicitude.

3. See Shurman v. United States, 5 Cir., 1955, 219 F.2d 282.

4. And see Lott v. United States, 5 Cir., 230 F.2d 915.

5. Moreover, appellant has followed the expedient of printing the record and brief instead of following the less expensive methods available under the rules of this Court.

6. Since this case was argued before us the Governor of New York, on Feb. 17, 1956, sent to the legislature of that state a special message containing these words:

"Among the many consequences of the tension and unrest of the post war world none is more intrinsically terrible than the steady rise of drug addiction among the youth of our nation. Four years ago your Honorable Bodies took action to

increase the penalties for the illegal sale or possession of narcotic drugs, since then our police have acted with vigor and our schools and churches have spoken out with growing urgency and alarm. And yet in spite of these efforts the drug traffic has continued to spread, the number of addicts has continued to grow. Narcotic arrests in New York City alone have risen 600 percent in the past decade; arrests of persons under twenty-one have increased 2300 percent.

"There can be no reasonable doubt as to why our efforts have failed: they have failed because we have not stopped the smuggling of drugs into our country, because we have not hit hard enough at the drug peddlers, and because we have not developed a dependable cure for drug addiction."