James A. **RICHARDS**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 15117.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 17, 1959.

Decided Feb. 16, 1960.

Mr. Joseph Forer, Washington, D. C., with whom Mr. David Rein, Washington, D. C., was on the brief, for appellant.

Mr. Fred L. McIntyre, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee.

Before WILBUR K. MILLER, BAZELON and DANAHER, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Armed with a search warrant, police officers and Federal narcotic agents

searched the appellant's premises on the third floor of a small apartment house. Across the hall from the appellant's apartment, they found a large quantity of marihuana in an unlocked trunk which was in a locked closet, the key to which they obtained from him. When the officers then told Richards and his wife they were both charged with violating the Marihuana Tax Act, that they were entitled to counsel and a hearing, and that any statement they made might be used against them, Richards said, "What are you charging my wife for; everything in that closet is mine; and the marihuana, the trunk, and everything, is all mine."[1] He warned his wife not to answer any questions. Several of the officers testified they heard Richards make these statements.

At the trial, Richards denied confessing to the officers, and disclaimed ownership or knowledge of the marihuana. He claimed that, a short time before the search, he had lent the trunk to Joseph F. Miller for the purpose of storing clothing belonging to Miller's "girl friend," and had allowed Miller to keep the trunk in the closet, to which he [Richards] had given him a key.[2] Having made out its case in chief, the prosecution chose not to call Miller to rebut the alleged loan of the trunk to him, apparently confident the jury would find Richards guilty in spite of the repudiation of his confession and his testimony that he had lent the trunk to another.

Choosing to accept the evidence of appellant's guilt, despite his testimony that another had equal opportunity to place the marihuana in the closet, the jury found him guilty as charged. Richards

states, as the sole ground of his appeal, that

"* * * [T]he trial court's instruction to the jury and rejection of a requested instruction erroneously preclude[d] the jury from drawing an inference adverse to the government from its unexplained failure to produce as a witness the paid police informer who had informed the police of the whereabouts of the marihuana and who, according to corroborated defense testimony, must have himself concealed the marihuana where it was found unbeknownst to the defendant."

Miller was a special employee of the Metropolitan Police whose affidavit was one of the grounds for the search warrant under which the officers entered Richards' residence. In the affidavit he said he had recently purchased marihuana from Richards at his apartment and had seen that it was kept in the hall closet. Miller was not present at the time of the search and so could have shed no light on the events of that evening. The testimony of Miller was therefore not essential to the case for the prosecution; but it was important to the appellant's attempt to establish that the trunk had been lent to him. It might well be said, consequently, that Richards' failure to call Miller as his witness led to the inference that his testimony would have been unfavorable to the defense.

Richards not only made no effort to obtain Miller's attendance as a witness; he did not even move that the Government be required to produce him. The appellant was content to ask for the following instruction:

---

1. Richards did not suggest to the officers that Joseph F. Miller, whom we shall identify hereinafter, had or might have placed the marihuana in the trunk. He did not even mention Miller's name.

2. Attempting to substantiate his story, Richards called two witnesses:
   (a) his friend Schermerhorn, who testified that a week or so before the search he was present when Miller came to Richards' apartment to borrow the trunk.

He said that later at a restaurant Richards gave certain keys to Miller, who then went out but shortly came back and *returned the keys to Richards.*
   (b) his friend Drago, who testified that on a certain occasion Miller came to Richards' apartment and offered to give him a raincoat which was too small for him. Miller then left the apartment but soon returned and gave Richards a raincoat. Drago did not know where he had gone to get the coat.

"The jury is instructed, as a matter of law, that any witness material to the case and who is available to be called by either side or party in this case, and such witness is not called to testify, then the jury may infer that the failure to call such witness is indicitive [*sic*] that his testimony would have been unfavorable to the side or party failing to call such witness."

The trial court rejected the foregoing, but instructed the jury in that respect as follows:

"There is still another rule of law that if either party of [*sic*] the Government or the defense has it peculiarly within his power to produce a witness whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony adduced would be unfavorable.

"However, there is no such presumption where the Government or defense fails to put on a stand a witness not deemed necessary to its case who might conceivably have given testimony favorable to that particular side."

Although neither Richards nor his counsel claimed at the trial that Miller had "framed" him, the appellant now complains because the Government did not produce Miller to rebut his story of the loan of the trunk; and reasons that, from the prosecution's failure to do so, and from the fact that Miller had told the police where the marihuana would be found, it must be inferred that Miller himself placed it in the trunk, "unbeknownst" to him. He argues it was error to reject the missing witness instruction offered by him and, while he concedes the first paragraph of the court's charge on that subject was correct under Graves v. United States,[3] he says the second paragraph of the quoted portion of the charge nullified the first paragraph. This, he says, prevented the jury from drawing the inference that Miller was the guilty party, and so constituted prejudicial error.

But Richards did not testify he had given Miller exclusive control of the closet. He himself had a key and therefore had continuously had access to the closet. Nor did Richards expressly charge Miller with possession, ownership or even knowledge of the marihuana; at most, his testimony was to the effect that several days before the search Miller had had the opportunity to put it in the trunk. So, the jury could have believed Richards' story and still have found him guilty because he had a key to the closet and because of the officers' testimony that he admitted ownership of the marihuana.

█ If in fact it was peculiarly within the power of the Government to produce Miller and if from its failure to produce him or to explain his absence, it must be inferred his testimony would have been unfavorable to the Government, the inference is only that Miller would have confirmed Richards' testimony; that he would have said he borrowed the trunk and the use of the closet. It is not to be inferred that Miller would have gone further than Richards did, and would have incriminated himself. As we suggested earlier in this opinion, the jury might have accepted Richards' testimony concerning the loan of the trunk, and might nevertheless have consistently found him guilty on the basis of ample evidence which did not conflict with and was not controverted by what the appellant said about lending the trunk. This would still be true, if Miller had testified and had confirmed the loan arrangement. So, even if the trial court erred in rejecting appellant's missing witness instruction and in charging as it did, no prejudice resulted.

█ Apart from that, however, we hold the instruction offered by appellant was incorrect and that the court's charge as to a missing witness was not improper. Moreover, appellant made no ob-

3. 1893, 150 U.S. 118, 14 S.Ct. 40, 37 L.Ed. 1021.

jection to the charge as given. Even so, we have considered his argument with respect thereto. In the second paragraph of the portion of the charge quoted above, the trial judge was simply saying a party does not incur the consequence of the absent witness rule merely because he fails to put on the stand a witness not deemed necessary to his case; that selectivity may be used to avoid offering evidence which would be cumulative or is thought unnecessary to establish the proposition for which he contends. Here the Government stood on the ground that Richards possessed the contraband. Its case had to succeed or fall as the jury might resolve that issue.

In our view, therefore, there was no occasion to give a missing witness instruction and, in giving it, the trial judge treated Richards more favorably than he deserved. Miller could not have elucidated the transaction as far as the case in chief was concerned; and the inference that he would have said he borrowed the trunk would not have "elucidated" that alleged transaction—which was already manifest from Richards' testimony.

■ More important, however, is the fact that it was not "peculiarly within the power" of the Government to produce Miller. He was well known to Richards, and was equally available to him. Shurman v. United States, 5 Cir., 1956, 233 F.2d 272. The cases cited by the appellant do not impel us to hold that a paid informer, occasionally employed by the police, is an employee of the Government or that he is to be held "peculiarly within" its power to produce or peculiarly under its influence when, as here, his identity and his whereabouts were known to the appellant.

As noted, Miller was not present when the search was made and could have added nothing to what was said by those who were present. The Government had only the burden of establishing beyond a reasonable doubt every element of the offense charged; it was not required to go further and rebut defense testimony which it thought it need not refute. The Government was entitled to consider, as it clearly did, that the issue turned on credibility, which is singularly a matter for the jury's consideration and determination. In such circumstances the Government's failure to call Miller or to explain his absence cannot help the appellant. His attack on the judge's charge, made for the first time on appeal, must fall. We find no error.

Affirmed.

BAZELON, Circuit Judge (dissenting).

Appellant's defense at trial was that the Government's special employee and informer, one Miller, with whom appellant was acquainted, had placed the marihuana in appellant's closet without appellant's knowledge. Essentially, this amounts to a charge that appellant was framed.[1] The defense was corroborated in essential details by Richards' wife and two others. Miller, who was in a critical position to affirm or deny appellant's charge or otherwise to elucidate the matter in issue was absent from the trial.[2]

---

1. In the trial transcript which appears in this record, appellant's trial counsel did not so characterize the defense. But this transcript does not include his closing argument to the jury, where such a statement would most likely be made. For a discussion of the role of the police informer in narcotics cases, see my statement in Jones v. United States, 1959, 105 U.S.App.D.C. 326, 266 F.2d 924.

2. Appellant was originally indicted on two counts, one for possessing marihuana on September 2, 1958, in violation of 26 U.S.C. § 4744(a) (1958), and the other for possession on August 31, 1958. The Government dismissed this indictment and thereafter obtained the present one count indictment for possession on September 2. The charge dropped involved an alleged sale by appellant to Miller and would therefore have required Miller's testimony. If the Government dropped that charge because of an unwillingness to call Miller, this would help to explain the Government's failure to call Miller in the present case despite the fact that he was under Government subpoena at the time of the trial.

Thus the instruction on the evidentiary significance of a missing witness was of crucial importance. The instruction given, in its entirety, was this:

"There is still another rule of law that, if either party of [sic] the Government or the defense has it peculiarly within his power to produce a witness whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony adduced would be unfavorable.

"However, there is no such presumption where the Government or defense fails to put on a stand a witness not deemed necessary to its case who might conceivably have given testimony favorable to that particular side."

Appellant's counsel in this appeal, who was not trial counsel, concedes that the first paragraph is a correct statement of the missing witness rule as laid down by the Supreme Court in Graves v. United States, 1893, 150 U.S. 118, 14 S. Ct. 40, 37 L.Ed. 1021. And he finds no fault with the second paragraph, standing alone, which was apparently intended to reflect the prevailing rule that no adverse presumption arises from a party's failure to call a witness whose testimony would be merely cumulative or redundant.[3] See 6 Wigmore, Evidence § 1907 (3d ed. 1940). His objection is that, taken together, the two parts of the instruction are confusing, misleading and prejudicial. But appellant's trial counsel did not object to the instruction as given. The one he requested was no more explicit or helpful.[4] Moreover, it was erroneous.[5]

The question, therefore, is whether the instruction bearing on appellant's primary defense was so obscure and misleading that it affected "substantial rights" within the meaning of the plain error rule. Rule 52(b), Fed.R.Crim.P. 18 U.S.C.A. I conclude that it did.[6]

---

3. It is difficult, however, to see why an instruction on this point was needed since that issue was not in the case. Not even the Government contends that Miller's testimony would be repetitive or cumulative.

4. Appellant's counsel requested the following:
"The jury is instructed, as a matter of law that any witness material to the case and who is available to be called by either side or party in this case, and such witness is not called to testify, then the jury may infer that the failure to call such witness is indicitive [sic] that his testimony would have been unfavorable to the side or party failing to call such witness."

5. Appellant's requested instruction was less favorable than he was entitled to, for it did not rest upon the peculiar availability of the witness to one side or the other, but would have authorized the jury to draw an adverse inference against either or both parties, depending upon the jury's appraisal of all the circumstances. This approach is favored by Professor Wigmore, 3 Evidence § 288 (3d ed. 1940), and Professor McCormack, Evidence 534 (1954), and has been adopted by the Second and Third Circuits. United States v. Beckman, 2 Cir., 1946, 155 F.2d 580; United States v. Jackson, 3 Cir., 1958, 257 F.2d 41.

6. What constitutes "plain error" depends upon the circumstances of the case. See Stewart v. United States, 1957, 101 U.S. App.D.C. 51, 56, 247 F.2d 42, 48. Incomplete or misleading instructions have often been held to constitute plain error. See, e. g., Williams v. United States, 1942, 76 U.S.App.D.C. 299, 131 F.2d 21 (incomplete instructions); Tatum v. United States, 1951, 88 U.S.App.D.C. 386, 190 F.2d 612 (same); United States v. Raub, 7 Cir., 1949, 177 F.2d 312 (same); Stewart v. United States, 1954, 94 U.S.App. D.C. 293, 214 F.2d 879 (misleading).
In Bollenbach v. United States, 1945, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350, the Supreme Court reversed a conviction resting upon an erroneous supplemental instruction, saying, "A conviction ought not to rest on an equivocal direction to the jury on a basic issue." Id., 326 U.S. at page 613, 66 S.Ct. at page 405. "Discharge of the jury's responsibility for drawing appropriate conclusions from the testimony depended on discharge of the judge's responsibility to give the jury the required guidance by a lucid statement of the relevant legal criteria." Id., 326 U.S. at page 612, 66 S.Ct. at page 405.

While I agree that the second paragraph tended to negate the first paragraph's clear statement of the Graves rule, I do not think this defect constitutes "plain error" requiring reversal. I find such error, however, when this inadequacy is added to another, and more serious, defect in the instructions. This defect stems from the trial court's failure to adequately explain to the jury when the Graves rule may be invoked, or, more specifically, under what conditions a party "has it peculiarly within his power to produce a witness." [150 U.S. 118, 14 S.Ct. 41]

The need for such clarification is plainly apparent from the fact that the meaning of this phrase is the subject of disagreement, not only between counsel in this case, but also between my brethren and me, and between several of the Federal courts. Government counsel, my brethren, and at least one circuit court hold that "peculiarly within his power" means mere "physical availability" alone. That is, if a witness is physically available to both sides for the purpose of serving a subpoena upon him, he is not peculiarly available to either side, and no adverse presumption can be inferred. On the other hand, counsel for appellant, a majority of the Federal courts (which, in my judgment, includes this one), numerous commentators and I think that "peculiarly available" means more than mere physical availability. Under the latter view, even if one side could obtain service of a subpoena upon a witness, he may still be said to be "peculiarly available" to the other side where there is a likelihood of bias on the part of the witness in favor of the other side, or where, as here, there is a special relationship between the witness and the other side, such as kinship or employment.

My brethren find support for their view in Shurman v. United States, 5 Cir., 1956, 233 F.2d 272. There the Court of Appeals for the Fifth Circuit held that a "special employee" of the Federal Bureau of Narcotics who was known to the defendant and witnessed three illegal sales transactions was equally available to both sides. That case may be distinguishable in that the witness disappeared before trial and could not be found despite the Government's strenuous efforts to locate him. In any event it appears to be an aberrant case since another division of the same court reached the opposite conclusion two months earlier in McClanahan v. United States, 5 Cir., 1956, 230 F.2d 919.[7] There, in holding that defendant's failure to call his own attorney to elucidate a transaction under suspicion justified an unfavorable inference, the court approved the following summary of the law:

"Availability of a witness is not to be determined from his mere physical presence at the trial or his accessibility for the service of a subpoena upon him. On the contrary, his availability may well depend, among other things, upon his relationship to one or the other of the parties and the nature of the testimony that he might be expected to give * * *. Deaver v. St. Louis Service Co., Mo. App., 199 S.W.2d 83, 85."

And the Third Circuit, citing McClanahan with approval, recently held that a special employee of the Narcotics Bureau was not equally available to the defendant even though he was sitting in the courtroom for part of the trial. The court rejected the physical availability test, saying that "certainly he was not the kind of witness that the defendant could be expected to call." United States v. Jackson, 3 Cir., 1958, 257 F.2d 41, 43, 44. For examples of other circuits rejecting the physical availability test, see United States v. Beekman, 2 Cir., 1946, 155 F.2d 580; Samish v. United States, 9 Cir., 1955, 233 F.2d 358, 365.

Finally, there is authority in this circuit that a witness can be "peculiarly

---

7. Although the author of the Shurman opinion and another judge on the panel previously sat in McClanahan, that case was not cited and no attempt was made to distinguish it.

available" to one side within the meaning of the Graves rule even though he is physically available to both parties. In Billeci v. United States, 1950, 87 U.S. App.D.C. 274, 279, 184 F.2d 394, 399, 24 A.L.R.2d 881, we held that no unfavorable inference could be drawn against the defendant for failure to call certain witnesses since there was no showing that the witnesses in question were "peculiarly available" to him. We pointed out that "at least one of the potential witnesses * * * was a police officer, and certainly it could not be inferred that he was more readily available to the appellants than to the prosecutor." This view is consistent with our statement in Milton v. United States, 1940, 71 App. D.C. 394, 397, 110 F.2d 556, 559, where the prosecutor commented upon defendant's failure to call his employer:

"* * * the woman stood in close relation to appellant Quantrille, within the meaning of our decision in the Egan case; she was presumably known and available to

appellants; her unexplained absence suggests that appellants had good reason for not calling her; and this was properly argued against them."

In Egan v. United States, 1923, 52 App. D.C. 384, 396, 287 F. 958, 970, we held that the trial judge's instructions were improper, since no Graves inference "may be drawn by a jury because a party fails to call as a witness one who is in a legal sense a stranger to him and is equally available to the other side." By necessary implication, it seems to me, the party that fails to call a witness who is "legally related" (e. g., employer-employee) must bear the consequences of an adverse inference.

Since lawyers and courts cannot agree upon the meaning of critical words of the Graves rule, certainly the jury cannot be expected to know what they mean.[8] The failure of the trial court to explain them in the context of this case may well have affected the verdict.[9] Accordingly I would reverse and remand for a new trial.

8. "Legal presumptions involve subtle conceptions to which not even judges always bring clear understanding." Bollenbach v. United States, 1945, 326 U.S. 607, 614, 66 S.Ct. 402, 90 L.Ed. 350.

9. I do not reach the question whether the trial judge should have told the jury that,

as a matter of law, Miller was peculiarly available to the Government, or whether he should have explained the meaning of that term and allowed the jury to decide if, on the facts, he was peculiarly available to the Government. As far as I am aware, that question has not been decided in this circuit.