454 P.2d 779

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**Samuel SOLIZ, Defendant-Appellant.**

**No. 290.**

Court of Appeals of New Mexico.

May 2, 1969.

R. E. Riordan, Las Cruces, for appellant.

James A. Maloney, Atty. Gen., James V. Noble, Asst. Atty. Gen., Santa Fe, for appellee.

OPINION

WOOD, Judge.

Convicted of unlawful possession of and unlawful sale of marijuana, defendant appeals. Sections 54–7–13 and 54–7–14, N.M. S.A.1953 (Repl.Vol. 8, pt. 2). He claims: (1) the State's evidence is inherently improbable and (2) the trial court erred in refusing his requested instruction. The instruction concerned the failure to call a witness.

State Police Officer Sedillo, together with his associates, Juan Gallegos and Daniel Chaves, met defendant in a bar. Manuel Verdugo and two others were also present.

Sedillo's testimony of what ensued is not contradicted. According to Sedillo, he asked defendant if he had any narcotics; defendant acknowledged that he did and asked Sedillo how much he wanted to buy; Sedillo handed $7.00 to defendant; defendant then instructed Sedillo to go to the restroom; in the restroom defendant handed Sedillo seventeen cigarettes and suggested they go outside, " * * * 'blow a few and · talk · about other transactions?' * * .· *'' Defendant, Verdugo, Sedillo, Gallegos and Chaves went to a car and while in the car cigarettes were smoked. Some of these cigarettes were those sold to Sedillo, some were produced by defendant.

The cigarettes sold to Sedillo were marijuana.

*Asserted inherently improbable evidence.*

Defendant contends that Sedillo's testimony is inherently improbable. In support of this claim he points out that Sedillo's meeting defendant in the bar was not prearranged; that the conversation about purchase and sale and the transfer of the money took place in the presence of five people yet delivery of the cigarettes took place in the restroom where only defendant and Sedillo were present; that both defendant and Sedillo supplied cigarettes to those who smoked in the car yet only those supplied by Sedillo (from his purchase) were accounted for.

" * * * Inherently improbable testimony involves a claim that something has been done that it would not seem possible could 'be done under the circumstances described;' * * *'' People v. Brown, 100 Cal.App.2d 207, 223 P.2d 60 (1950); People v. Tereno, 207 Cal.App.2d 246, 24 Cal.Rptr. 501 (1962). "Testimony is· not inherently improbable unless it appears that what was related or described could not have occur-

red." People v. Thomas, 103 Cal.App.2d 669, 229 P.2d 836 (1951). Compare State v. Armijo, 35 N.M. 533, 2 P.2d 1075 (1931).

■ By these definitions, Sedillo's testimony is not inherently improbable.

■■ Defendant also seems to contend that because Sedillo was the only person who testified concerning defendant's possession and sale, Sedillo's testimony should not have been believed and his conviction should be set aside. The jury determines the credibility of the witnesses. State v. Hudson, 78 N.M. 228, 430 P.2d 386 (1967). Credibility is not determined by the number of witnesses. As a general rule, the testimony of a single witness is sufficient evidence for a conviction. State v. Hunter, 37 N.M. 382, 24 P.2d 251 (1933). The general rule is applicable here. Sedillo's testimony was sufficient evidence on which to base the conviction.

*Requested instruction concerning failure to call a witness.*

Both the State and the defense requested instructions concerning the failure to call a witness. The trial court refused both requests, informing counsel that the failure to call a witness was a matter for jury argument. See State v. Martin, 32 N.M. 48, 250 P. 842 (1926); compare Chavez v. Atchison, Topeka and Santa Fe Ry., 77 N.M. 346, 423 P.2d 34 (1967).

In refusing to instruct on the subject, the trial court followed N.M. UJI No. 15.21 which provides that no such instruction is to be given in civil cases. Of course, if no such instruction should be given in criminal cases, the refusal to instruct was proper. Compare Territory v. Douglas, 17 N.M. 108, 124 P. 339 (1912). However, it is not necessary to decide whether such an instruction may be given in criminal cases in New Mexico.

Instead, we assume that it would be error for the trial court to refuse to give an instruction on the subject when the instruction would be applicable. What, however, is this instruction about?

If " * * * the facts would thereby be elucidated, * * * ", the failure of a party to bring a witness before the court indicates " * * ` * as the most natural inference, that the party fears to do so, and this fear is some evidence that the * * ` * witness, if brought, would have exposed facts unfavorable to the party." 2 Wigmore, Evidence § 285 (3rd ed. 1940). While, generally, the propriety of such an inference is not doubted, Wigmore § 285, supra, cautions that the inference " * * * cannot fairly be made except upon certain conditions; * * *"

The conditions listed by Wigmore are: (a) the witness must be within the power of the party to produce, (b) the witness must not be so prejudiced against the party that the latter could not expect to obtain the truth from the witness, (c) the testimony of the witness is comparatively important, non-cumulative, and not inferior to the evidence that has already been utilized, and (d) the witness is not equally available to both parties. Wigmore, supra, §§ 286, 287, 288.

■ Thus, the inference (that the missing witness would have exposed facts unfavorable to the party) may not be drawn unless the conditions are met, and unless the facts would thereby be elucidated. It is difficult to determine when these requirements have been met. Cases dealing with an instruction on the inference illustrate the difficulty. See Wynn v. United States, 397 F.2d 621 (D.C.Cir. 1967); Richards v. United States, 107 U.S.App.D.C. 197, 275 F.2d 655 (1960); cert denied 363 U.S. 815, 80 S.Ct. 1253, 4 L.Ed.2d 1155 (1960); Shurman v. United States, 233 F.2d 272 (5th Cir. 1956). On the condition of equal availability, compare the dissenting opinion in Richards v. United States, supra, with State v. Smith, 51 N.M. 328, 184 P.2d 301 (1947).

Defendant would draw the inference against the State in this case because neither Gallegos nor Chaves testified. According to Sedillo, both men, identified as his associates, were present during the conversation in the bar, present when the money was paid to defendant, and present when the cigarettes were smoked in the car. Would their testimony have made the facts clearer? Was their testimony cumulative only, or inferior to Sedillo's testimony?

The names of both men were added, with court approval, to the names of witnesses endorsed on the indictment. Both men were subpoenaed, appeared on the trial date and sworn as witnesses for the State. Although present, they were not called to testify by either side. Were they as equally available to the defense as to the State?

In order to draw the inference, the jury would have to resolve these questions. How was the jury to resolve them? The requested instruction reads:

"There is still another rule of law that if either party, the government or the defense, has it peculiarly within his power to produce a witness whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony adduced would be unfavorable.

"However, there is no such presumption where the government or defense fails to put on the stand a witness not deemed necessary to its case who might conceivably have given testimony favorable to that particular side.".

We assume (but do not decide) that this instruction, which is taken from Richards v. United States, supra, includes all the requirements that must be met before the inference may be drawn. Nevertheless, the instruction is incomplete; none of the terms are defined. What does "peculiarly within his power" mean? How could the jury determine that either party did not deem a witness necessary to its case? As the dissenting opinion in Richards v. United State, supra, states:

"Since lawyers and courts cannot agree upon the meaning of critical words * * *, certainly the jury cannot be expected to know what they mean. * * *"

**300**

The purpose of instructing the jury is to make plain and clear to the jury the issues it is to determine. Flanary v. Transport Trucking Stop, 78 N.M. 797, 438 P.2d 637 (Ct.App.1968). Defendant's requested instruction was not clear and did not make plain to the jury how it could apply the instruction because it did not define the terms used in the instruction. Being incomplete, the requested instruction was misleading. Martin v. Gomez, 69 N.M. 1, 363 P.2d 365 (1961); compare Stephens v. Dulaney, 78 N.M. 53, 428 P.2d 27 (1967); Flanary v. Transport Trucking Stop, supra.

Even with the assumptions made, the trial court properly refused the requested instruction because it was a misleading instruction. See § 21–1–1(51) (2) (h), N.M. S.A.1953 (Supp.1967); Embrey v. Galentin, 76 N.M. 719, 418 P.2d 62 (1966).

The judgment and sentence are affirmed.

It is so ordered.

OMAN and HENDLEY, JJ., concur.